STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth W. LIPPOLD, Defendant-Appellant.†

Court of Appeals

*No. 2007AP1773–CR. Oral argument June 17, 2008.
—Decided July 22, 2008.*

2008 WI App 130

(Also reported in 757 N.W.2d 825.)

† Petition to review denied.

699

700

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas J. Nitschke* of *Nitschke & Sika, S.C.*, of Milwaukee, with oral argument by *Thomas J. Nitschke*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J. B. Van Hollen*, attorney general, and *Michael J. Losse*, assistant attorney general, with oral argument by *Michael J. Losse*.

Before Curley, P.J., Wedemeyer and Kessler, JJ.

¶ 1. CURLEY, P.J.   Kenneth W. Lippold appeals the judgment convicting him, following a jury trial, of seven counts of receiving stolen property, as a party to the crime, contrary to Wis. Stat. §§ 943.34(1)(bm) (created effective Feb. 1, 2003, 2001 Wis. Act 109) and 939.05 (2001–02).[1] Lippold argues that the trial court erred in failing to dismiss the charges against him because the State never established venue in Milwaukee County. He submits that "no direct evidence was presented that [he] received the property in Milwaukee County or that he transported the property through Milwaukee County." Because an element of the crime "receiving stolen property" is that the property must be stolen, and here, that act occurred in the County of Milwaukee, the State proved venue beyond a reasonable doubt. Moreover, at trial, ample circumstantial evidence was presented that Lippold possessed the stolen property in Milwaukee County. Consequently, we affirm.

## I.  BACKGROUND.

¶ 2.   On February 21, 2006, Lippold was charged with one count of receiving stolen property, contrary to Wis. Stat. § 943.34(1)(c) (amended effective Feb. 1, 2003, 2001 Wis. Act 109). Approximately one year later, the State filed an amended information charging Lippold with seven counts of receiving stolen property, as a party to a crime, contrary to Wis. Stat. §§ 943.34(1)(bm) and 939.05.[2]

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] WISCONSIN STAT. § 943.34(1)(c) applies if the value of the property exceeds $10,000. Section 943.34(1)(bm) applies if the

¶ 3. The charges arose when St. Luke's Hospital discovered numerous respirators missing prior to conducting routine preventative maintenance on them. Investigators from St. Luke's and the police began to trace what happened to the respirators using their serial numbers. The investigation led to an Illinois company that claimed to have purchased some of the respirators directly from Lippold. Lippold was a salesman of medical devices and equipment, and in this capacity, he had access to the hospital's respirators. In addition, a shipping label was recovered that was used to ship one of the missing respirators to a purchaser in Missouri. The label bore Lippold's Wauwatosa address where he lived and stored medical devices and equipment in his garage. Records later established that the equipment was sold between November 2003 and November 2004.

¶ 4. As part of the investigation, Lippold was interviewed by a hospital investigator and a police detective and was asked whether he had information regarding the missing respirators. Lippold claimed that he bought the respirators from a guy named "Steve" at a restaurant in Kenosha County. Lippold was unable to provide any contact information for Steve, or any information other than a very general physical descrip-

value of the property exceeds $5000, but does not exceed $10,000. The judgment of conviction reflects convictions on all counts as charged in the information. As noted, the amended information recites that the charges were issued under § 943.34(1)(bm). However, the jury verdicts in two counts found that the respirators had a value of more than $2500, but less than $5000, thus placing them under § 943.34(1)(bf), a Class I felony. On remand, the clerk's office is directed to correct the judgment of conviction. The record establishes that at sentencing the trial court was aware of the fact that two of the counts fell within WIS. STAT. § 943.34(1)(bf).

tion, that might aid investigators in locating Steve. The hospital investigator testified that during the interview, Lippold offered to "make it right" to the hospital by paying them $70,000, roughly the cost of the missing equipment. Lippold was later terminated from his employment.

¶ 5. Lippold pled not guilty and requested a jury trial. During the jury trial, after the State rested, Lippold moved to dismiss, challenging the correctness of charging and trying this case in Milwaukee County. His attorney argued that nothing occurred in Milwaukee County, as Lippold told the police he received the property in Kenosha County. The trial court instructed the jury on the question of venue and the jury was asked to "consider whether the crime was committed in Milwaukee County." However, no specific question on the verdict asked the jurors to determine if venue was proven, and, if it was, whether it was proven by direct or circumstantial evidence. The jury returned verdicts convicting Lippold of all seven counts.

¶ 6. Following the jury trial, the trial court heard argument once again as to whether venue was properly established in Milwaukee. Lippold contended that the fact the property was stolen in Milwaukee was insufficient evidence of venue because the element of receiving stolen property, which requires that the property be stolen, is not an "act." Lippold's attorney argued that the only counties where a trial could be held were counties "where the property [was] actually received or transported through." His attorney also argued that the evidence connecting the respirators to Milwaukee County via a shipping label for one of the stolen pieces of equipment, which bore Lippold's home address in Wauwatosa, was insufficient because there was no evidence presented as to which UPS store handled the

shipping. He contended that people often list their home addresses when shipping goods, but that does not mean that the shipped item actually was at the home of the sender.

¶ 7.   The trial court determined that because the respirators were stolen in Milwaukee County, that was sufficient evidence to connect Milwaukee County to the stolen property and denied the motion. This appeal follows.

## II.   ANALYSIS.

¶ 8.   Lippold contends that the trial court erred when it denied his motion to dismiss because no direct evidence was presented during the trial that he received the equipment in Milwaukee County or transported it through the county. Further, he argues that when a person is charged with the crime of receiving stolen property, the county where the property was stolen is insufficient to establish venue.[3] Noting that this is a question of first impression, Lippold relies on five cases from other jurisdictions for support. We are not persuaded.

---

[3] In Lippold's brief, he also raises the issue that the trial court erred in allowing the assistant district attorney to argue that venue was proper in the county where the items were stolen. He appears to be claiming the trial court should have resolved the venue issue prior to trial because by presenting seven counts to the jury, the sheer number of counts may have prejudiced the jury into deciding the venue issue against Lippold. Neither of these issues were raised below and we decline to address them. Pursuant to *State v. Rogers*, 196 Wis. 2d 817, 828–29, 539 N.W.2d 897 (Ct. App. 1995), failure to raise specific challenges in the trial court waives the right to raise them on appeal.

¶ 9.   " 'The term venue refers to the locality of the prosecution; venue sets the particular judicial district in which a criminal charge is to be filed and in which it will be tried.' " *State v. Anderson*, 2005 WI 54, ¶ 27, 280 Wis. 2d 104, 695 N.W.2d 731 (quoting 4 WAYNE R. LAFAVE et al., *Criminal Procedure* § 16.1(a), at 458 (2d ed. 1999)) (one set of internal quotation marks omitted). In contrast, jurisdiction " 'refers to the authority or power of the court to take action on a particular charge.' " *Id.* (quoting 4 WAYNE R. LAFAVE et al., *Criminal Procedure* § 16.1(a), at 458 (2d ed. 1999).

¶ 10.   In his brief and at oral argument, Lippold challenged the standard of review proposed by the State. It is well-established that following a trial, we are obligated to give deference to a jury verdict. As established in *State v. Corey J.G.*, 215 Wis. 2d 395, 407–08, 572 N.W.2d 845 (1998), "[w]e will not reverse a conviction based upon the State's failure to establish venue unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient that there is no basis upon which a trier of fact could determine venue beyond a reasonable doubt." Although venue in Wisconsin must be proven beyond a reasonable doubt, it is not an element of the crime, but rather a matter of procedure, which refers to the place of trial. *State v. Dombrowski*, 44 Wis. 2d 486, 501–02, 171 N.W.2d 349 (1969). We first dispose of Lippold's argument that the charges against him have to be dismissed because venue must by proven by direct evidence of his receiving or transporting the equipment in Milwaukee County. Venue need not be proven by direct evidence. *Smazal v. State*, 31 Wis. 2d 360, 363, 142 N.W.2d 808 (1966) ("[T]he lack of direct proof does not necessarily mean

venue was not proved beyond a reasonable doubt."). It can also be proven by circumstantial evidence. *Id.* Venue may be established by proof of facts and circumstances from which it may be reasonably inferred.[4] *Id.*

¶ 11. We next address Lippold's claim that no evidence was presented at trial to support venue in Milwaukee County. As noted, no Wisconsin case addresses the question of what type of evidence is needed to establish venue in a charge of receiving stolen property. However, *State v. Swinson*, 2003 WI App 45, 261 Wis. 2d 633, 660 N.W.2d 12, is instructive. Swinson was charged with multiple counts of theft by fraudulent representation. *Id.*, ¶ 1. After being convicted by a jury, Swinson brought a postconviction motion claiming, *inter alia,* that there was insufficient evidence at trial to support bringing the charges in Sheboygan County. *Id.*

---

[4] At oral argument, Lippold's attorney appeared to concede that venue could be proven by circumstantial evidence in this case if it was determined that the county where the property was stolen from was sufficient to establish venue. However, he contended that here, the jury was improperly instructed because it was not told whether the place where the property was stolen established venue. Instead, he was allowed to argue to the jury that venue did not attach in the county where the property was stolen, while the prosecutor was allowed to argue that it did, and the jury was left to choose which theory applied. Lippold's attorney argued that this was improper because the jury should have been instructed one way or the other. Because Lippold's attorney did not request separate questions or object to the verdict form, we decline to address the propriety of the lack of any questions on the verdict concerning venue. WIS. STAT. § 805.13(3) (2005–06) ("Failure to object at the [instruction and verdict] conference constitutes a waiver of any error in the proposed instructions or verdict."). Section 805.13 pertains to criminal proceedings. *State v. Cockrell*, 2007 WI App 217, ¶ 36 n.11, 306 Wis. 2d 52, 741 N.W.2d 267.

¶ 12.    The underlying facts are that Swinson was employed by the Kohler Company as a project manager for a renovation project. *Id.*, ¶ 6. In that capacity, project managers could contract with outside vendors for goods and services. *Id.* After the construction was completed, an audit was conducted because of significant cost overruns. *Id.*, ¶¶ 6–7. The audit revealed that no goods could be found at the project for one particular company. *Id.*, ¶¶ 11–12. At trial, evidence was submitted that payment would be made after verification and a project manager could initial an invoice to verify work. *Id.*, ¶ 8. An analysis of the account records indicated that approximately $264,824 had been paid to the suspect company. *Id.*, ¶ 10. The company's invoices and purchase orders were addressed to the Kohler Company in Sheboygan County. *Id.*, ¶ 7. Ultimately, this company was linked to Swinson by bank records. *Id.*, ¶ 10. At trial, Swinson admitted that he was the only employee who worked at the suspect company. *Id.*, ¶ 17.

¶ 13.    On appeal, Swinson claimed "that the State failed to produce sufficient evidence to show that any of the elements of the offense occurred in Sheboygan [C]ounty." *Id.*, ¶ 18. This court determined that the wording of Wis. Stat. § 971.19(2) was crucial. *See Swinson*, 261 Wis. 2d 633, ¶ 20. The statute reads:    " 'Where 2 or more acts are requisite to the commission of any offense, the trial may be in any county in which *any* of such acts occurred.' " *Id.* (quoting § 971.19(2) (emphasis in *Swinson*)). Noting that the specific statute for theft by fraud required more than two acts, this court concluded that, "if *any* element occur[red] in Sheboygan [C]ounty, then that county can be the place of trial." *Id.*, ¶ 21 (emphasis in *Swinson*). Finding that several elements of the crime of theft by fraud occurred in Sheboygan, this

court affirmed the convictions. *Id.*, ¶¶ 21–24, 60. As set forth in WIS JI—CRIMINAL 1453, there are six elements to establish theft by fraud. *Swinson*, 261 Wis. 2d 633, ¶ 20. They are:

> First, that the defendant made a false representation to (name owner of property).
>
> Second, that the defendant knew that such representation was false.
>
> Third, that the defendant made such representation with intent to deceive and to defraud (name owner of property).
>
> Fourth, that the defendant obtained title to the property of (name owner of property) by such false representation.
>
> Fifth, that (name owner of property) was deceived by such representation.
>
> Sixth, that (name owner of property) was defrauded by such representation.

*Id.* (quoting WIS JI—CRIMINAL 1453).

¶ 14.   This court reasoned that:

> First, the record shows that the invoices were addressed to the Kohler Company at the Sheboygan [C]ounty address and this is sufficient circumstantial evidence to establish that the invoices were *received* in Sheboygan [C]ounty. *See Smazal*, 31 Wis. 2d at 363–64, 142 N.W.2d 808. The record establishes that an element occurred in Sheboygan [C]ounty because it establishes that Kohler was deceived by Swinson's false representation in Sheboygan [C]ounty.
>
> Second, the record shows that purchase orders were "billed to" Kohler's accounts payable department at the Sheboygan [C]ounty address. This is sufficient

circumstantial evidence that the relevant checks were cut from the accounts payable department located at the Sheboygan [C]ounty address. Swinson makes a point of arguing that the bank location from which each check was drawn was not proved by the State; the bank location can be significant to prove venue but is not controlling because also significant is the location where the check is "cut." Once a check is "cut" or signed in Sheboygan county, Kohler has parted with money. That is, it has been defrauded by acting on the false representation in Sheboygan [C]ounty. This also establishes the occurrence of an element in Sheboygan [C]ounty.

Swinson makes much of the fact that the State put forth no evidence that the invoices were prepared in Sheboygan [C]ounty. Swinson admitted that he prepared the invoices–the location where the invoices were prepared is not controlling. It is the act of making the false statement and not the manner in which it is made that is important. *Cf. State v. Timblin*, 2002 WI App 304, ¶ 30, 259 Wis. 2d 299, 657 N.W.2d 89 (in *Timblin*, we affirmed a conviction for theft by fraud where all the false statements were passed through a conduit to the victims). We are satisfied that the evidence sufficiently establishes that Kohler was deceived and defrauded in Sheboygan [C]ounty. The State sufficiently proved venue in Sheboygan [C]ounty.

*Swinson*, 261 Wis. 2d 633, ¶¶ 22–24.

¶ 15.   Here, the trial court correctly instructed the jury that there are three elements of the crime of receiving stolen property:

Receiving stolen property is defined in Section . . . 943.34 of the Criminal Code of Wisconsin as committed by one who intentionally receives stolen property. Before you may find the defendant guilty of this offense,

710

the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.

One, the defendant intentionally received the BiPAP Vision respirator with respect to that particular count among the charges that you consider. Intentionally requires that the defendant had the mental purpose to receive the property. To receive means to acquire possession or control of the property.

The second element of the offense the State must prove beyond a reasonable doubt is that the BiPAP Vision respirator with respect to that count was stolen property. Property is stolen when it has intentionally been taken from the owner without consent and with the intent . . . to deprive the owner of its possession permanently.

The third element of the offense is that the property – when the property was received, the defendant knew that it was stolen property.

You cannot look into a person's mind to find intent or knowledge. Intent and knowledge must be found, if found at all, from the defendant's acts, words and statements, if any, and from all the facts and circumstances in the case bearing upon intent and knowledge.

If you are satisfied beyond a reasonable doubt that all three elements of this offense have been proved, you should find the defendant guilty with respect to that count that you're considering. If you're not so satisfied, you must find the defendant not guilty.

■■

¶ 16.    Extrapolating from the holding in *Swinson*, we conclude that because the crime of receiving stolen property requires more than two acts, and one of the acts is that the property must be stolen and that act

occurred in Milwaukee County, venue was properly established. Lippold argues that the element of the crime of receiving stolen property—that the State needs to prove the property was stolen—is not an "act" in the classical sense; rather, the word "stolen" simply describes the type of property needed to fulfill the requirements of the crime. Again, we look to *Swinson* for assistance. In *Swinson*, several of the elements are not "acts" as Lippold would have us define them. Instead, they appear to be states of mind. Consequently, we are satisfied that Lippold reads *Swinson* too narrowly.

¶ 17. Despite the similarity of the *Swinson* facts to those present here, Lippold submits that five foreign cases support his position. Again, we are not persuaded. Our review of these cases reveals that these states either have drastically different laws than ours or the facts are distinguishable.

¶ 18. In the oldest of the cases cited by Lippold, *Pollard v. Virginia*, 261 S.E.2d 328, 329–30 (Va. 1980), the Virginia Supreme Court addressed venue in a case where Pollard was charged in Richmond, Virginia, with receiving stolen property, an air hammer. Pollard was a City of Richmond, Virginia, employee. *Id.* at 329. He was under surveillance by police in an investigation of the suspected theft of city property. *Id.* He was seen leaving his home located in a different county than Richmond and traveling to an equipment rental store that was also in a different county than Richmond. *Id.* At the store, the police seized numerous pieces of equipment in Pollard's pickup truck and items from the store identified by the store manager as having been sold previously to him by Pollard. *Id.* The air hammer in issue was such an item and was the property of the City of Richmond that had been assigned to a truck

driver who did not testify. *Id.* at 329–30. The air hammer had disappeared months before. *Id.* at 330.

¶ 19.    Pollard gave conflicting explanations of how he obtained the seized items (including the air hammer). *Id.* at 329. Pollard told the police he acquired some of the items at the city dump and others were purchased from garbage truck drivers. *Id.* The store manager said Pollard claimed he bought the air hammers from bankruptcy sales and going-out-of-business sales. *Id.* In finding that venue had not been proven, the court observed that the air hammer in issue was a part of the store inventory obtained from Pollard previously, and thus there was "meager proof" that Pollard received the property in Richmond. *Id.* at 330. The Commonwealth attempted to prove venue through circumstantial evidence, as no statute such as our WIS. STAT. § 971.19(2) apparently existed. We are satisfied that the case is inapposite. First, Virginia had no special statute similar to our § 971.19(2). In addition, our circumstantial evidence is much stronger than the facts in the *Pollard* case.

¶ 20.    The Supreme Court of Alabama also tackled the venue issue in a receiving stolen property case in *Watts v. Alabama,* 435 So. 2d 135 (Ala. 1983). The evidence presented strongly suggested that someone other than Watts stole the property and then sold it to Watts. *Id.* at 135. While a special statute was referenced that said "[w]hen property is stolen in one county and carried into another, venue is in either county," the supreme court found it inappropriate to charge the receiver of stolen property in the county where the property was stolen "absent some proof connecting [the charged person] with the theft or possession in that first county." *Id.* at 136 (internal quotation marks and citations omitted). This finding conflicts with the *Swin-*

713

*son* holding. *Swinson* specifically establishes that criminal charges can be brought in the county where any of the elements of the crime occurred. *Swinson,* 261 Wis. 2d 633, ¶ 21. In addition, unlike the facts in *Watts,* our facts strongly suggest Lippold was involved in the original theft of the respirators; indeed, we have facts that suggest Lippold was the thief.

¶ 21.   In 1987, the Colorado Supreme Court, in the case of *Colorado v. Cortez,* 737 P.2d 810, 810 (Colo. 1987), was presented with a case where Cortez had been acquitted of burglary and found guilty of theft by receiving. The underlying facts are that a burglary occurred in Adams County, Colorado. *Id.* The next day, Cortez attempted to pawn an item taken in the burglary in Denver, Colorado. *Id.* at 811. After the store owner became suspicious, Cortez was arrested. *Id.* Cortez told the police that he received the items that were stolen at a restaurant after a man he met at a bar asked him to pawn the items to raise money to purchase marijuana. *Id.* Cortez was charged in Adams County, where the burglary occurred. *Id.* In a motion seeking acquittal at the close of the prosecution's case against him, Cortez challenged venue for the theft by receiving charge. *Id.* The trial court disagreed with his challenge, but the Court of Appeals reversed. *Id.*

¶ 22.   The supreme court affirmed the court of appeals. *Id.* at 814. The supreme court acknowledged that a statute (similar to our Wis. Stat. § 971.19(2)) existed, but refused to apply it because the counties were in different judicial districts. *Cortez,* 737 P.2d at 812. The court held, "Proper venue exists under section 18–1-202(7), 8B C.R.S. (1986), in any county in which separate offenses are committed as part of the same criminal episode *only if* the counties are within the same judicial district." *Cortez,* 737 P.2d at 812 (emphasis

in *Cortez*). The court went on to hold that a different venue statute, which read " '[e]xcept as otherwise provided by law, criminal actions shall be tried in the county where the offense was committed or in any other county where an action in furtherance of the offense occurred," was inapplicable because the jury acquitted Cortez of burglary after being instructed that "it was permissible to infer from the defendant's exclusive possession of the recently stolen property that the defendant participated in the original taking of the property." *Id.* at 812–14 (citation and one set of internal quotation marks omitted). In sum, the Colorado statute similar to our special venue statute applies only if the two counties are in the same judicial district and the only other potentially applicable statute does not apply unless there is " 'sufficient evidence to tie the defendant to an act in furtherance of the offense in [the charging county].' " *Id.* at 812–13 (citation omitted).

¶ 23.   Lippold also points to *Kansas v. Alvarez*, 678 P.2d 1132 (Kan. Ct. App. 1984), *abrogated by State v. Martinez*, 874 P.2d 617 (Kan. 1994), for support. In this case, a pickup truck was stolen in one Kansas County and Alvarez was arrested in another after having been seen driving it. *Id.* at 1134. After Alvarez was charged with theft in the county where the pickup was stolen, information came to light that Alvarez came into possession of the truck in the county where he was seen operating the truck. *Id.* The State amended the complaint to include an alternative charge of receiving stolen property in the second county. *Id.* The court of appeals concluded that K.S.A. 22–2609, a special statute that in theft or robbery cases permitted venue in any county where the property was taken, did not permit the charge of receiving stolen property to be tried in the county where the truck was stolen. *Id.* at

1136. It held, the "statute was not intended to expand that general rule by allowing one to be prosecuted for receiving stolen property in any county other than that where the property was allegedly received." *Id.* While that is the holding of the case, a later supreme court case, *Martinez*, abrogated *Alvarez*. There, the court left no room for doubt by stating: "The Court of Appeals' conclusion concerning the application of K.S.A. 22–2609 is not supported by any authority. K.S.A. 22–2609, a venue statute, applies to all of the acts of theft set out in K.S.A. 21–3701. The holding in . . . *Alvarez* . . . to the contrary is disapproved." *Martinez*, 874 P.2d at 623.

¶ 24.   Finally, a Texas appellate case also addressed venue in a receiving stolen property case. *See Jones v. Texas*, 979 S.W.2d 652 (Tex. Crim. App. 1998). In *Jones*, eight video cameras were stolen in a burglary in Brazos County. *Id.* at 653–54. Four of the video cameras were recovered from pawn shops in Austin. *Id.* at 653. Jones claimed he was approached by several men at his home in Burleson County and given the cameras, which he then pawned using his driver's license in each transaction. *Id.* at 653–54. He was charged with theft by receiving stolen property in Brazos County. *Id.* at 654. At the close of the State's case, he moved for a verdict of acquittal, arguing that "the State had not produced 'a scintilla of evidence' to show that he had anything to do with the burglary." *Id.*

¶ 25.   There, the court's determination that venue was not proven was dominated by a change in the law. Prior to the adoption of the Model Penal Code, the offense of theft by receiving had its own special venue statute permitting prosecution "in the county where the theft was committed." *Id.* at 656. The statute was later revised and this language was dropped, and under the

716

new venue statute, "[v]enue for theft by receiving attaches at the time and place the offender takes control of the property." *Id.* at 657. In contrast, however, to the venue statute applicable in *Jones*, we have a specific statute that permits prosecution in the county where the theft occurred. *See* WIS. STAT. § 971.19(2).

¶ 26.  In sum, the foreign authority cited by Lippold is either anchored on venue statutes unlike ours, or driven by significantly different facts.

■■

¶ 27.  Finally, we note that the circumstantial evidence pointing to Lippold engaging in acts in Milwaukee County, including the actual theft, was extremely strong. As a salesman, Lippold had unhampered access to the stolen equipment which was located in Milwaukee County. He could have easily stored the equipment in his garage as he routinely kept medical equipment there. There were phone calls between Lippold and the companies he sold the respirators to, presumably made while Lippold was in Milwaukee County, and there was a shipping label related to a purchase order for one of the stolen units with Lippold's return address in Milwaukee County. More damaging was Lippold's offer to pay for the equipment—an act not usually offered by the innocent—and Lippold's preposterous story about receiving stolen property worth thousands of dollars from the unknown "Steve" also pointed to Lippold's complicity.

¶ 28.  Unlike the cases relied on by Lippold, the facts here point to Lippold being the thief, as well as the receiver of stolen property. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.