COURT OF APPEALS
DECISION
DATED AND FILED

May 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP880-CR**

Cir. Ct. No. 2019CF170

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MISTY M. ROSS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Chippewa County: STEVEN R. CRAY and BENJAMIN J. LANE, Judges. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Misty Ross appeals from a judgment convicting her of theft of movable property and from an order denying her motion for postconviction relief.[1]    Ross argues that the evidence at her jury trial was insufficient to prove a theft of movable property and to establish venue in Chippewa County.  In the alternative, she contends that we should exercise our discretionary-reversal powers and order a judgment of acquittal.  We reject Ross's arguments and affirm.

## BACKGROUND

¶2    The State filed a criminal complaint in Chippewa County Circuit Court charging Ross with theft of movable property (with a value greater than $5,000 but less than $10,000).  The complaint alleged that on February 22, 2019, Ross withdrew $7,000 from her ex-husband, Myles's bank account via an internet transfer.[2]  The complaint further alleged that Myles had received sole ownership of the bank account as part of a 2016 divorce settlement but that Ross's name had never been removed from the account.

¶3    The circuit court subsequently held a preliminary hearing at which both the investigating officer and Ross testified.  Ross admitted that Myles had received sole ownership of the bank account as part of their divorce judgment.  She also admitted that she accessed the bank account online and had transferred $7,000 out of the account without contacting Myles or receiving his permission.

---

[1] The Honorable Steven R. Cray presided over this case through sentencing, and the Honorable Benjamin J. Lane presided over Ross's motion for postconviction relief.

[2] We use pseudonyms instead of the victims' names.  *See* WIS. STAT. RULE 809.86(4) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Ross explained that she used the money to pay off a car loan and to repay other people who had loaned her money.

¶4      The parties eventually tried the case to a jury. Myles testified at trial that he and his significant other, Kendall, had purchased a new home on February 22, 2019, and that they had received a check for approximately $15,000 from the title company. They then deposited the check into Myles's savings account at Royal Credit Union (RCU) that same day. A few days later, however, Myles noticed that $7,000 had been withdrawn from the account. Myles immediately contacted RCU and learned that Ross withdrew the money on February 22 and that she had subsequently removed her name from the account. Myles testified that he was surprised Ross had access to the account because he had received the account as part of their divorce judgment and because Ross "really hadn't … used [the account] … prior to [their] divorce."

¶5      Myles also testified that he never consented to Ross withdrawing money from the account, nor had Ross offered to return the $7,000. Myles said he attempted to contact Ross multiple times, but she never answered or returned his phone calls. Myles further testified that he and Kendall were living at the same residence in Chippewa County on February 22, 2019—the same day Ross withdrew money from the account.

¶6      The State also called Kendall as a witness, and her testimony corroborated much of Myles's testimony. As relevant here, Kendall testified that she and Myles were living together in Chippewa County on February 22, 2019, that they had deposited a $15,000 check into Myles's savings account that day, and that she did not consent to Ross withdrawing any money from Myles's

account. Following Kendall's testimony, the prosecutor read portions of Ross's preliminary hearing testimony to the jury, and the State then rested its case.

¶7 Thereafter, Ross testified in her own defense. She again admitted that she had transferred $7,000 from Myles's bank account—without knowing the source of the money—and that she did so without Myles's and Kendall's consent. Ross also acknowledged that she had received a voicemail from Myles after the transfer but did not contact him back because she "knew what position [she] was in" and "could tell … he was upset." Ross explained that she had transferred the money while she was preparing to move to Florida and was trying to "tie up loose ends."

¶8 The jury found Ross guilty of theft of movable property. The circuit court withheld sentence and placed Ross on probation for two years. Ross subsequently filed a motion for postconviction relief, arguing that the trial evidence was insufficient to establish a theft of movable property or venue in Chippewa County. The court rejected Ross's arguments and denied her motion.

¶9 Ross now appeals. Additional facts will be provided as necessary below.

**DISCUSSION**

**I. Sufficiency of the evidence**

¶10 Ross renews her challenges to the sufficiency of the evidence. In particular, she contends that the State failed to prove that the money in Myles's bank account was "movable property," as defined in WIS. STAT. § 943.20(2)(ag)

and (2)(b), and, relatedly, failed to establish the asportation element of theft.[3] She also asserts that venue was never established because the evidence was insufficient to prove, beyond a reasonable doubt, that any element of the offense occurred in Chippewa County.

¶11 Whether the evidence was sufficient to sustain a jury verdict is a question of law that we review de novo. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. In doing so, however, we must view the evidence in the light most favorable to the State and to the conviction. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). A conviction cannot be reversed unless the evidence "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *Id.* "Thus, 'a defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt.'" *State v. Coughlin*, 2022 WI 43, ¶25, 402 Wis. 2d 107, 975 N.W.2d 179 (citation omitted).

¶12 Ross's sufficiency of the evidence argument also involves the interpretation and application of WIS. STAT. § 943.20(1)(a), which are questions of law that we review de novo. *See State v. Hanson*, 2012 WI 4, ¶14, 338 Wis. 2d 243, 808 N.W.2d 390. Our interpretation of a statute begins with the statutory language. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271

---

[3] Although Ross organizes her arguments in the opposite order, we will address the meaning of "movable property" before ascertaining whether the evidence was sufficient to establish asportation. To a certain extent, Ross's asportation argument conflates her argument regarding the interpretation and application of "movable property." Thus, the proper interpretation and application of "movable property" necessarily informs our resolution of Ross's asportation argument.

Wis. 2d 633, 681 N.W.2d 110. We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

A. *Theft of movable property*

¶13 A person commits the crime of theft under WIS. STAT. § 943.20(1)(a) if that person "[i]ntentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property." *Id.*; *see also* WIS JI—CRIMINAL 1441 (2022). Ross contends that there was insufficient evidence to prove any of the elements under § 943.20(1)(a). The crux of Ross's argument is that the $7,000 in Myles's bank account did not constitute "movable property" or "property" as those terms are defined in § 943.20(2)(ag) and (2)(b), respectively.

¶14 As noted in the statute's plain language, WIS. STAT. § 943.20(1)(a) prohibits theft of only "movable property."[4] "Movable property" is specifically

---

[4] Ross devotes a notable portion of her brief-in-chief to arguing that the plain language, extrinsic sources, and case law support an interpretation that WIS. STAT. § 943.20(1)(a) applies to only "movable property." The State concedes that "[t]he basic premise that the statute applies to only movable property is not in dispute." It also notes that none of the legislative history discussed in Ross's brief-in-chief "answers the actual question underlying her argument: whether money resting in one's bank account is movable property under the theft statutes." Ross does not argue in her reply brief that the legislative history provides any assistance to our interpretation or application of the meaning of "movable property," and she therefore concedes those arguments. *See* ***United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578. Accordingly, we will not address the legislative history discussed in Ross's brief-in-chief.

defined as "property whose physical location can be changed, without limitation including electricity and gas, documents which represent or embody intangible rights, and things growing on, affixed to or found in land." Sec. 943.20(2)(ag). The word "property" is further defined as "all forms of tangible property, whether real or personal, without limitation including electricity, gas and documents which represent or embody a chose in action or other intangible rights." Sec. 943.20(2)(b).

¶15     Based on these definitions, Ross asserts that "'movable property' is limited to tangible property whose physical location can be changed." She further argues that the evidence at trial showed that she only made an internet transfer. She contends that "[t]here was no evidence that she intentionally took and carried away, or transferred, [Myles]'s and [Kendall]'s movable property—that is, tangible property whose physical location can be changed."

¶16     In response, the State points out that we have previously recognized that "'money' clearly falls within the common sense and statutory definition of property under [WIS. STAT.] § 943.20(2)(b)." *See State v. Kawalec*, No. 2017AP798-CR, unpublished slip op. ¶9 n.4 (WI App July 24, 2019).[5] The State further argues that money in a bank account can be moved between bank accounts or taken out of a bank account; therefore, it is property whose physical location can be changed. In the alternative, the State argues that even if money in a bank account represents only an intangible right to that amount of money, the definition of movable property still includes documents which represent or

---

[5] An unpublished opinion that is authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

embody intangible rights. *See* § 943.20(2)(ag). The State asserts that the term "documents" is broad enough to include the specific line-by-line demarcations of funds in bank statements that represent the right to that amount of money, which would be affected by online transfers to and from bank accounts.

¶17 Even if we assume that money in a bank account generally constitutes only an intangible right to that money, we conclude that the jury could reasonably infer that, by executing the internet transfer, Ross took and transferred "documents which represent or embody a chose in action or other intangible rights." *See* WIS. STAT. § 943.20(2)(b). The evidence plainly established that immediately before Ross's transfer, Myles's had a right to over $15,000 in his bank account. After Ross completed her transfer, Myles lost access to $7,000, which loss was reflected in his bank records. The evidence at trial did not explain how, precisely, this transaction occurred. Nonetheless, the logical—and most reasonable inference—would be that Ross's internet transfer caused a transaction in which "documents" representing or embodying Myles's right to the money were removed from his bank account and into Ross's personal account.[6]

¶18 Although the evidence at trial did not explain the form of the documents that were transferred, this deficiency does not render the evidence insufficient to support Ross's conviction. The jurors could have inferred—from the evidence presented at trial and from their own common knowledge—that the documents representing or embodying Myles's right to the $7,000 were either

---

[6] It would be unreasonable to suggest that RCU did not keep some form of documentation regarding the account balances for its customers. Indeed, the State presented a bank statement from Myles's account, which demonstrated that RCU was tracking the amount of money going into and out of Myles's bank account and which showed the transaction at issue in this case.

cash, checks, or other paper documents providing the rights to the $7,000. Indeed, any one of these items would qualify as "movable property"—i.e., tangible property whose physical location can be changed.

¶19 Moreover, even if the bank "documents" were in an electronic form, which the jury could have also inferred, Ross provides no basis for us to conclude that those documents were not "movable property." Indeed, Ross does not develop any argument or identify any legal authority supporting such a proposition. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address an argument that is undeveloped and unsupported by legal authority). We will not abandon our neutrality to develop this argument for her. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶20 Regardless, electronic documents appear to meet the definition of movable property. Electronic documents would fall within the plain and ordinary meaning of the word "documents" used in WIS. STAT. § 943.20(2)(b). *See Document*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "document" as "[s]omething tangible on which words, symbols, or marks are recorded"). Although the word traditionally "embraced any piece of paper with information on it," "[t]oday the term also embraces any information stored on a computer, electronic storage device, or any other medium." *Id.* As the State aptly notes, the legislature did not restrict the meaning of "documents"—other than the restrictions already imposed by the general definition of property—and, therefore, we interpret the term "broadly to give effect to the legislature's intent." *See State v. Quintana*, 2008 WI 33, ¶32, 308 Wis. 2d 615, 748 N.W.2d 447. Nothing in § 943.20(2)(b) or Wisconsin case law limits "documents" to only paper documents.

¶21    Further, electronic documents would qualify as tangible property because they have some physical existence in a computer or other electronic storage device. *See Tangible property*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "tangible property" as "[p]roperty that has physical form and characteristics"); *see also Intangible property*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "intangible property" as "[p]roperty that lacks a physical existence"). In addition, the physical location of an electronic document could be changed because it could be moved from one electronic storage device to another.[7]

¶22    Ross also contends that there was insufficient evidence to prove the asportation element because "[t]here was no evidence that movable property was moved away from an area where it was intended to be." Ross suggests that asportation requires some movement of the property's physical location.

¶23    Ross's arguments are misplaced. Asportation is the removal or carrying away of things from one place to another, and it requires movement—however slight—"from the area where the [thing] was intended to be." *See **State v. Johnson***, 200 Wis. 2d 704, 710, 548 N.W.2d 91 (Ct. App. 1996) (citation omitted). The evidence at trial showed that Ross removed $7,000 from Myles's bank account via an internet transfer, and Ross admitted to doing so in her testimony. Myles also testified that he did not consent to Ross removing the $7,000 from his bank account. Accordingly, the jury could find that Ross moved the $7,000 in Myles's bank account away "from the area where [the money] was intended to be." *See **id**.* Even if the asportation element required some physical

---

[7] To the extent that Ross argues that the defendant must physically touch the movable property in some way, we conclude that such an argument is undeveloped. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

movement, as Ross contends, that requirement was proven here because the funds, or at the very least the documents detailing Myles's rights to those funds, were no longer physically located in his bank account after Ross's transfer.

¶24    In short, whether Ross's internet transfer resulted in the movement of cash, checks, or other documents embodying Myles's rights to the money in his bank account, the jury could find that Ross took and transferred Myles's movable property by executing the internet transfer.[8]  Ross has therefore failed to overcome her heavy burden of showing that the evidence was insufficient to support her conviction.  *See **Coughlin***, 402 Wis. 2d 107, ¶25.

## B. Venue

¶25    Generally, criminal actions must be tried in the county where the crime was committed.  WIS. STAT. § 971.19(1).  However, where the commission of an offense requires two or more acts, the trial may be in any county in which any of such acts occurred.  Sec. 971.19(2).  Although venue must be proven beyond a reasonable doubt, it is not itself an element of the crime.  ***State v. Lippold***, 2008 WI App 130, ¶10, 313 Wis. 2d 699, 757 N.W.2d 825.  "[V]enue may be established by proof of facts and circumstances from which it may be reasonably inferred."  ***State v. Swinson***, 2003 WI App 45, ¶19, 261 Wis. 2d 633, 660 N.W.2d 12.  In other words, "[v]enue need not be proven by direct evidence." ***Lippold***, 313 Wis. 2d 699, ¶10.

---

[8] Ross also challenges the circuit court's interpretation of the relevant statutes and its rationale for concluding that the evidence was sufficient to support her conviction.  We need not address these arguments, however, because we are affirming on grounds other than those relied upon by the circuit court.  *See **State v. Earl***, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

¶26 Here, the jury could reasonably infer that the transfer of property in this case occurred in Chippewa County. Myles and Kendall both testified that they resided in Chippewa County on the day Ross transferred the money out of Myles's RCU account. Myles also testified that before that transfer occurred, he deposited a check into that account at RCU. Although Myles did not explain where he physically deposited the check, the jury could reasonably infer that Myles used an RCU near his residence in Chippewa County and that RCU had physical locations in Chippewa County.[9] The jury could also infer that Myles's money—either in the form of cash, check, or documents—was physically located at an RCU in Chippewa County when Ross effectuated the internet transfer. Because the jury could reasonably infer that Myles's and Kendall's money was physically located at an RCU bank in Chippewa County, the jury could find that the actual transfer of money occurred in Chippewa County.

¶27 The evidence also supported a reasonable inference that Myles and Kendall were in Chippewa County when Ross transferred Myles's and Kendall's money without their consent. The State argues—and Ross does not dispute—that venue can be established in any county where an element of the theft offense occurred. *See Swinson*, 261 Wis. 2d 633, ¶21. WISCONSIN STAT. § 943.20(1)(a) requires proof that the owner of the property at issue did not consent to the defendant taking and transferring the property. Again, both Myles and Kendall

---

[9] The circuit court went one step further and concluded that the jury could rely on its common knowledge that RCU had two branches in Chippewa County. Ultimately, we need not determine whether the jury had or could rely upon its own knowledge regarding RCU's physical locations because the circumstantial evidence supported reasonable inferences that RCU had locations in Chippewa County. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds."). As the State correctly observes, "The jury does not need to know that [RCU had branches in Chippewa County] to come to the reasonable conclusion that people bank where they live."

testified that they resided in Chippewa County on the day Ross transferred their money and that they never consented to that transfer. The jury could thus infer that Myles and Kendall were in Chippewa County when Ross transferred the money without their consent.

¶28 Ross argues that the evidence was insufficient to prove beyond a reasonable doubt that Myles and Kendall were in Chippewa County at the time of the internet transfer.[10] In doing so, Ross contends that the evidence suggested that Myles and Kendall were in Eau Claire on the day of the transfer because the deposited checks contained a stamp on the back stating: "RCU E.C." According to Ross, "[t]his [notation] indicates [the checks] were deposited in Eau Claire."

¶29 Ross, however, cites no evidence supporting her assumption that this notation means the checks were deposited in Eau Claire. Nor was this notation discussed or highlighted for the jury at trial. Accordingly, none of the jury's permissible inferences discussed above are rendered unreasonable because of the "RCU E.C." notation stamped on the checks. Although Ross emphasizes the beyond-a-reasonable-doubt standard in her arguments, that "is not the test on appeal." *See **Poellinger***, 153 Wis. 2d at 503. We therefore decline her apparent

---

[10] Ross contends that there was no evidence regarding her physical location when she made the internet transfer. Although the State does not contest this argument, we are not so convinced. Ross never testified where she was living at the time of the transfer. She did testify, however, that when she made the transfer, she was in the process of moving to Florida and was seeking to "resolve all the financial issues *here* that were outstanding, [and] essentially just close all [of her] business *here* in Wisconsin." (Emphasis added.) Ross further testified that "right before" she made the transfer, she spoke to Myles "about visiting [her] dog one more time before [she moved to Florida]." Ross also testified that she "made one last visit to see [her] dog"—the dog that she had previously shared with Myles. In addition, Myles testified that he had resided in Chippewa County at that time. A jury could therefore infer that Ross was near—and specifically in—Chippewa County when she took and transferred the money because her testimony suggested that she visited her dog and closed her financial accounts in the Chippewa County area around the time of the transfer.

13

invitation to reweigh the evidence, and we adopt the reasonable inferences that support the jury's verdict.[11]  *See* ***State v. Hughes***, 2011 WI App 87, ¶10, 334 Wis. 2d 445, 799 N.W.2d 504.

## II. Discretionary reversal

¶30    Ross next argues that we should reverse her conviction and order the entry of a judgment of acquittal under our discretionary-reversal powers.  She contends that the real controversy was not fully tried because the circuit court removed the term "movable" and the definition of "movable property" from the jury instructions and because venue was never established.  Ross also asserts that justice has miscarried because the evidence at trial was insufficient to prove the elements of theft under WIS. STAT. § 943.20(1)(a) and (3)(bm).

¶31    We may reverse a judgment and order entry of the proper judgment if it appears from the record that the real controversy has not been fully tried or it is probable that justice has for any reason miscarried.  WIS. STAT. § 752.35.  The real controversy may not have been fully tried where "a significant legal issue was not properly tried to the court," where "the record [is] deemed incomplete or insufficient," or where a jury instruction "obfuscates the real issue."  ***Vollmer v. Luety***, 156 Wis. 2d 1, 20-22, 456 N.W.2d 797 (1990).  In addition, justice has miscarried if "there would be a substantial probability that a different result would be likely on retrial."  ***State v. Burns***, 2011 WI 22, ¶24, 332 Wis. 2d 730, 798 N.W.2d 166 (citation omitted).  "We exercise our discretionary-reversal powers 'only in exceptional cases.'"  ***Id.***, ¶25 (citation omitted).

---

[11] Ross also argues—and the State "agrees"—that she did not forfeit her venue argument. Accordingly, we need not address this issue.

¶32 In evaluating whether jury instructions obfuscate the real issue, we do not consider the jury instructions in isolation; rather, we view them "in the context of the overall charge." *See State v. Sanders*, 2011 WI App 125, ¶13, 337 Wis. 2d 231, 806 N.W.2d 250 (citation omitted). We will uphold jury instructions where, considering the proceedings as a whole, they adequately give the jury the appropriate legal principles despite not being "phrased with the precision of a mathematical formula." *Id.*

¶33 Here, the circuit court instructed the jury that the first element of the offense required proof that Ross "intentionally took and carried away or transferred property of another." Although the pattern jury instruction includes the word "movable" and defines the meaning of "movable property," *see* WIS JI— CRIMINAL 1441 (2022), the court omitted those parts of the instruction. Notably, the court informed the parties of these edits prior to closing arguments, and Ross's attorney did not object.[12]

¶34 In spite of the circuit court's edits, the jury still had the appropriate legal principles upon which to evaluate the evidence in the context of the theft charge. The facts of this case were not overly complicated. The jury was informed that Ross had to take and carry away or transfer property—actions which all suggest that the property had to physically move. Thus, while the niceties of Ross's current legal arguments may not have been as prominent to the jury as she now bemoans, we cannot conclude that the court's edited, unobjected-to jury

---

[12] Ross does not advance any independent challenge to the circuit court's edits to the jury instructions. Such an argument would have been forfeited due to Ross's failure to contemporaneously object to the jury instructions. *See State v. McKellips*, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258.

instructions obfuscated the real issue in this case. Rather, the instructions adequately communicated that physical movement of the property was necessary. Moreover, for the reasons discussed above, the jury could infer that Ross's internet transfer involved the transfer of "documents" embodying Myles's right to the money in his bank account. Accordingly, we are satisfied that the movable-property issue in this case has been fully tried.

¶35 Finally, we generally reject discretionary-reversal requests where a party merely rehashes arguments that we have already rejected. *See, e.g.*, *State v. Ferguson*, 2014 WI App 48, ¶33, 354 Wis. 2d 253, 847 N.W.2d 900; *State v. Goetsch*, 186 Wis. 2d 1, 22, 519 N.W.2d 634 (Ct. App. 1994). We find no reason to deviate from that practice here. There is not a substantial probability that Ross would be acquitted upon retrial if the movable-property issue were further developed. Likewise, there is no basis to conclude that the issue of venue was not fully tried. Although Ross claims that the jurors might have become confused by testimony about Myles's and Kendall's residence, she fails to demonstrate that this testimony would cause any confusion. The fact that Myles and Kendall resided in Chippewa County made it more likely that they banked in Chippewa County and would have been there at the time of the transfer.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16