# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1876-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>　　　　Plaintiff-Respondent-Petitioner,<br>　　v.<br>Donald P. Coughlin,<br>　　　　Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 397 Wis. 2d 242, 959 N.W.2d 82
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 21, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 1, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Juneau |
| JUDGE: | James Evenson and Stacy A. Smith |

JUSTICES:

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion.

NOT PARTICIPATING:

KAROFSKY, J., did not participate.

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Winn S. Collins*, assistant attorney general, with whom on the briefs was *Joshua L. Kaul*, attorney general. There was an oral argument by *Winn S. Collins*.

For the defendant-appellant, there was a brief filed by *Phillip J. Brehm* and *Phillip J. Brehm Attorney at Law*, Janesville. There was an oral argument by *Phillip J. Brehm*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2019AP1876-CR
(L.C. No. 2010CF222)

STATE OF WISCONSIN            :            IN SUPREME COURT

**State of Wisconsin,**

       **Plaintiff-Respondent-Petitioner,**

   **v.**

**Donald P. Coughlin,**

       **Defendant-Appellant.**

**FILED**

**JUN 21, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion.

KAROFSKY, J., did not participate.

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 ANN WALSH BRADLEY, J. The State of Wisconsin seeks review of the court of appeals' unpublished decision, which reversed Donald Coughlin's convictions on 15 counts of sexual assault. Specifically, those counts consisted of 14 counts of

first-degree and second-degree sexual assault of a child and one count of repeated sexual assault of a child.[1]

¶2 Arguing that the convictions should be reinstated, the State advances that there was sufficient evidence for the jury to find Coughlin guilty on all 15 counts at issue. It also asks this court to hold that the jury instructions control in an evidence-sufficiency claim when there is a discrepancy between the jury instructions and the verdict form.

¶3 In response, Coughlin contends that because the State did not ask questions particular to the charged time periods, there was no evidence upon which the jury could have convicted him on these 15 counts. For purposes of this case only, he also acknowledges that the jury instructions should guide this court's review.

¶4 Under the facts of this case, we conclude that the sufficiency of the evidence should be evaluated according to the jury instructions. Further, we conclude that there was sufficient evidence for the jury to find Coughlin guilty on all 15 counts at issue. Coughlin failed to overcome his heavy burden to show that no reasonable jury could have concluded, beyond a reasonable doubt, that he was guilty.

¶5 Accordingly, we reverse the decision of the court of appeals.

---

[1] State v. Coughlin, No. 2019AP1876-CR, unpublished slip op. (Wis. Ct. App. Mar. 4, 2021) (affirming in part and reversing in part judgment and order of the circuit court for Juneau County, James Evenson and Stacy A. Smith, Judges).

2

I

¶6    In 2009, three individuals came forward as adults, alleging that Coughlin repeatedly sexually abused them over the course of their childhoods.  Throughout the opinion, we refer to these individuals as Coughlin's older stepson, younger stepson, and nephew.

¶7    Initially, the State charged Coughlin with one count of repeated sexual assault of a child[2] and 21 counts of first-degree[3] and second-degree[4] sexual assault of a child for alleged conduct that involved his nephew and two stepsons.  The six counts involving his older stepson were affirmed by the court of appeals, and Coughlin does not contest his convictions on those counts.  Thus, they are not at issue here.

¶8    The initial complaint also charged Coughlin with child enticement[5] involving a fourth alleged victim.  This count

---

[2] Wis. Stat. § 948.025(1) (2017-18).

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[3] Wis. Stat. § 948.02(1)(e).

[4] Wis. Stat. § 948.02(2).

[5] Wis. Stat. § 948.07.

involving the fourth individual is likewise not before us. The jury found Coughlin not guilty on that charge.[6]

¶9 Each count was tied to a separate, specified time period.[7] The charged time periods involving the nephew encompassed primarily the autumn seasons of 1989, 1990, 1991, and 1992.[8] Pertaining to the younger stepson, the charged time periods involved primarily each spring from 1990 through 1994 and each autumn from 1989 through 1994.[9] The periods were delineated in this fashion for the younger stepson because during the school year he lived with his mother, siblings, and

---

[6] After getting divorced from the stepsons' mother, Coughlin remarried. The individual associated with the child enticement count was the boyfriend of Coughlin's stepdaughter from that later marriage. For this count, the time period was on or about and between February 1, 2008, and February 28, 2008, more than a decade in time after the other charged offenses. The facts alleged pursuant to this count were unconnected to the facts pertaining to the nephew and stepsons discussed in this opinion.

[7] We refer to these charged time periods as the autumn and spring months because that is generally the seasons that the charged months cover. However, we recognize that in certain instances, some of the charged time periods technically begin or end outside of that named season.

[8] Specifically, the charged time periods involving the nephew were September 1-November 19, 1989 (Count 7), September 1-December 31, 1990 (Count 8), September 1-December 31, 1991 (Count 9), and September 1-November 19, 1992 (Count 11).

[9] September 1-December 31, 1989 (Count 12), February 1-May 14, 1990 (Count 13), September 1-December 31, 1990 (Count 14), February 1-May 14, 1991 (Count 15), September 1-November 9, 1991 (Count 16), February 1-May 14, 1992 (Count 17), September 1-December 31, 1992 (Count 18), February 1-May 14, 1993 (Count 19), September 1-December 31, 1993 (Count 20), February 1-May 14, 1994 (Count 21), and September 1-November 9, 1994 (Count 22).

Coughlin but spent summers with his uncle, at which time he would not have had as much interaction with Coughlin.

¶10 At trial, the nephew and stepsons described an environment of near constant physical and sexual abuse at the hands of Coughlin. They also described Coughlin making threats that discouraged them from reporting the abuse. Such threats included Coughlin threatening to kill them or their mother, and Coughlin stating that no one would believe the boys if they came forward.

¶11 According to the nephew's and stepsons' testimony, the abuse occurred either when one of them was alone with Coughlin or when all or some combination of the three boys were alone with Coughlin. The locations of the abuse included Coughlin's truck when the boys went deer shining with him in autumn, at the village firehouse where Coughlin was fire chief, and at the family home where the stepsons lived with Coughlin. The nephew lived nearby and often spent time at Coughlin's home with the stepsons.

¶12 Specifically, the nephew testified that he started sixth grade in 1988 at 11 years old and that the sexual abuse started when he was in sixth grade. The first incident involved Coughlin measuring his penis when they were at the firehouse. The nephew explained that the sexual abuse continued the same year as the first incident when he would go deer shining with Coughlin and his cousins (the stepsons). He said that they went deer shining "quite a bit," further stating that it "[c]ould be four times a month, could be once a month, depending on the

5

month." He confirmed that deer shining happened "more than once a month during the late summer and fall." The nephew's testimony also illustrated the pervasiveness of the abuse: "[T]here was so many incidents of stuff that -- to say one time for one thing is pretty hard to remember." He testified that the abuse continued until he finished high school, and confirmed that it happened at least once in the autumn months of 1989, 1990, 1991, and 1992.

¶13 The younger stepson likewise testified that Coughlin started sexually abusing him in 1985 when he was seven years old. He explained that Coughlin abused him when he took the boys deer shining, which occurred "twice a week" in the autumn of each year. Additionally, he testified that the abuse would also occur at the home where he and the older stepson lived at the time with their mother, Coughlin, and two sisters. When asked how often the abuse would occur in the home, the younger stepson responded, "Weekly." The younger stepson testified that in the autumn of 1989, some sort of sexual activity "[d]efinitely" occurred and that they would go deer shining with Coughlin one to two times a week at a minimum.

¶14 With regard to the spring of 1990, the younger stepson testified that some type of sexual activity happened "[a]t least once a week." In response to questioning, he also confirmed that some type of sexual activity occurred at least once in the autumn of 1990, spring of 1991, autumn of 1991, spring of 1992, autumn of 1992, spring of 1993, autumn of 1993, and spring of 1994. He further confirmed that Coughlin asked him to engage in

6

sexual activity on at least three occasions in the autumn of 1994.

¶15 Even though Coughlin does not challenge his convictions as to the six counts involving the older stepson, the testimony regarding those convictions also displayed the pervasiveness of the abuse experienced by all three children. The older stepson explained that "going hunting, going shining deer, going to cut wood, going to play at the firehouse, those types of things where we'd be alone with him would lead up to it almost every time." He testified that they would be "out shining deer nonstop" in autumn, which was an occasion when the abuse would occur "without fail." The older stepson said that Coughlin would "pull his penis out of his pants and begin stroking it, and asking one of us to or ask us to join in, either masturbating ourselves or masturbate him." The older stepson explained that at the firehouse, Coughlin would abuse them "[b]asically every time [they] were alone with him."

¶16 Throughout trial, the nephew and stepsons often used the term "masturbate" to describe the following scenarios: when they would "masturbate" themselves at Coughlin's direction, when Coughlin would "masturbate" himself in their presence, when Coughlin would "masturbate" the boys, and when the boys would "masturbate" Coughlin at Coughlin's direction. The State would often refer to all four types of conduct as "sexual activity." It also referenced both Coughlin touching the boys' penises and Coughlin causing the boys to touch his penis in its closing argument.

7

¶17 In his trial testimony, Coughlin denied that he ever abused his nephew or two stepsons or that he ever masturbated in their presence or instructed them to masturbate. He said that he never molested them on their deer shining trips, in the home, or at other locations.

¶18 At the close of evidence, the circuit court instructed the jury and also read each verdict form to the jury. As relevant here, the definition of "sexual contact" in the jury instructions differed from the definition in the verdict form. The jury instructions defined "sexual contact" as "an intentional touching of the penis" of the nephew and stepsons by Coughlin or "an intentional touching by the victim" of Coughlin's penis "if the defendant intentionally caused or allowed the victim to do that touching." For there to have been sexual contact, the defendant must have acted with the intent to become sexually aroused or gratified.

¶19 By contrast, the verdict form defined "sexual contact" as only "the defendant touching the victim's penis" and did not include Coughlin intentionally causing them to touch his penis. "Sexual contact," in either definition, did not include instances when the nephew and stepsons masturbated themselves at Coughlin's direction or when Coughlin masturbated himself in the presence of the boys.

¶20 The jury found Coughlin guilty of the counts involving the nephew and stepsons and acquitted him of the child enticement charge involving another individual. Coughlin filed a postconviction motion, asking the circuit court to dismiss all

8

counts on the grounds that there was an insufficient factual basis to support a conviction for each count. In the alternative, Coughlin argued that he was entitled to a new trial due to ineffective assistance of counsel or because the real controversy had not been tried.

¶21 Reasoning that there was "more than enough evidence as [to] each time period that there was a physical touching done by the defendant or the defendant had them touch him," the circuit court denied Coughlin's motion. It further stated:

> [S]ince there was clearly testimony that supports the defendant on multiple occasions, either masturbating each victim or caused each victim to masturbate the defendant, it must be assumed that the jury used this testimony to support its verdict that the defendant was guilty of each of the counts they found him guilty of.

The circuit court also concluded that Coughlin's counsel was not ineffective and that all of the real controversies had been tried to the jury.

¶22 The court of appeals affirmed Coughlin's convictions for the six counts involving the older stepson and reversed his convictions as to the remaining counts involving the nephew and younger stepson. State v. Coughlin, No. 2019AP1876-CR, unpublished slip op., ¶2 (Wis. Ct. App. Mar. 4, 2021). It measured the sufficiency of the evidence against the verdict form and concluded that the evidence was insufficient to find Coughlin guilty on those counts. Id., ¶¶19, 37. In reaching its conclusion, the court of appeals reasoned that "there was no evidence from which a jury could conclude beyond a reasonable

9

doubt" that Coughlin touched the nephew's and younger stepson's penises during any of the charged time periods. Id., ¶24; see id., ¶28. The court of appeals also observed that its conclusion on sufficiency of the evidence would have been the same even if it had evaluated the evidence according to the jury instructions instead of the verdict form. Id., ¶37 n.13.

¶23 Further, the court of appeals rejected Coughlin's argument that a new trial was warranted in the interests of justice on the six counts it affirmed.[10] Id., ¶36. The State petitioned for this court's review of the court of appeals' reversal of the 15 counts. Coughlin did not cross-petition for review of the court of appeals' affirmance of his convictions on counts 1-6 involving the older stepson, and as noted, those counts are not before us.

II

¶24 We are called upon to determine whether the evidence at trial was sufficient to support Coughlin's convictions on the 15 counts involving the nephew and younger stepson. When a defendant challenges a verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State. State v. Long, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. If more than one inference can be drawn from the evidence, we must adopt

---

[10] Coughlin abandoned his ineffective assistance of counsel claim at the court of appeals and does not raise it here. He likewise does not raise the argument that a new trial is warranted in the interests of justice.

the inference that supports the conviction. Id. We will not substitute our own judgment for that of the jury unless the evidence is so lacking in probative value and force that no reasonable jury could have concluded, beyond a reasonable doubt, that the defendant was guilty. Id.

¶25 Thus, "a defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt." State v. Beamon, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681. Lastly, we consider the totality of the evidence when conducting a sufficiency of the evidence review. State v. Smith, 2012 WI 91, ¶36, 342 Wis. 2d 710, 817 N.W.2d 410.

III

¶26 We begin by addressing the threshold question of whether the jury instructions or the verdict form will guide our review of the sufficiency of the evidence in this case. Subsequently, we evaluate the evidence to determine whether a reasonable jury could find that Coughlin was guilty on the 15 counts at issue.

A

¶27 In this case we are asked to determine first if we are testing the sufficiency of the evidence against the jury instructions or the verdict form. The court of appeals assumed without deciding that it "should compare the trial evidence with the crime as described in the verdict form, rather than as defined in the jury instructions." Coughlin, No. 2019AP1876-CR, at ¶19. It further observed that its conclusions about the

11

sufficiency of the evidence would be the same if it had instead measured the evidence against the jury instructions. Id., ¶37 n.13.

¶28 Here the parties no longer contest this issue and essentially agree that the jury instructions should control at least for purposes of this case. We agree, and for the reasons set forth below, determine that in this case the jury instructions should govern our review. Our determination here to evaluate the sufficiency of the evidence against the jury instructions is based not only on the agreement of the parties, but also on a review of our case law together with a review of this record.

¶29 In State v. Beamon, this court addressed a situation where the jury instructions contained an erroneous statement of law. 347 Wis. 2d 559, ¶37. We measured the sufficiency of the evidence against the statutory elements of the crime, not the jury instructions, because the jury instructions did not correctly set forth the law. Id., ¶¶24, 40. However, the court observed that "[g]enerally, when the jury instructions conform to the statutory requirements of that offense, we will review the sufficiency of the evidence by comparison to those jury instructions." Id., ¶22.

¶30 In this case, the jury instructions adhere to the statutory elements of the offenses.[11] Unlike in Beamon, the jury

---

[11] Wisconsin Stat. § 948.01(5) provides in part that sexual contact is defined as:

instructions here did not constitute an erroneous statement of the law. Therefore, in reaching our conclusion, we take into account Beamon's statement regarding the trajectory of the law.

¶31 Further, a review of this record indicates that the parties seemingly understood "sexual contact" to mean both Coughlin touching the victims' penises and Coughlin causing the victims to touch his penis. "[J]ury instructions may be erroneous if they fail to instruct the jury on the theory of the crime that was presented to the jury during trial." State v. Williams, 2015 WI 75, ¶57, 364 Wis. 2d 126, 867 N.W.2d 736.

¶32 Here, the definition as reflected in the jury instructions was the theory of the crime presented throughout trial. The victims testified to both types of sexual contact, and the State explicitly acknowledged both forms of sexual contact in its closing argument. The record does not indicate that the jury was led to believe only Coughlin touching the

(a) Any of the following types of intentional touching, whether direct or through clothing, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant:

1. Intentional touching by the defendant or, upon the defendant's instruction, by another person, by the use of any body part or object, of the complainant's intimate parts.

2. Intentional touching by the complainant, by the use of any body part or object, of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.

boys' penises constituted sexual contact. Therefore, the jury instructions did not fail to instruct the jury on the theory of crime presented at trial. Under the facts of this case, we thus evaluate the sufficiency of the evidence against the jury instructions.

B

¶33 We address next whether a reasonable jury could have concluded beyond a reasonable doubt that during each of the charged time periods Coughlin engaged in "an intentional touching of the penis" of his nephew and younger stepson or there occurred "an intentional touching by the victim" of Coughlin's penis "if the defendant intentionally caused or allowed the victim to do that touching." As observed above, when a defendant challenges a verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State. Long, 317 Wis. 2d 92, ¶19. Accordingly, the defendant faces a heavy burden. Beamon, 347 Wis. 2d 559, ¶21.

¶34 Our determination is influenced by both deference to a jury verdict and reasonable inferences that can be drawn from the evidence presented. We keep in mind that a juror is not required to "ignore the larger picture so as to focus on each piece in a vacuum and ask whether that piece standing alone supports a finding of guilt." Smith, 342 Wis. 2d 710, ¶36. Thus, in giving deference to the jury verdict and viewing the evidence, together with reasonable inferences, in the light most favorable to the State, we conclude that there was sufficient

14

evidence for the jury to find Coughlin guilty on all 15 counts at issue. Coughlin failed to overcome his heavy burden to show that no reasonable jury could have concluded, beyond a reasonable doubt, that he was guilty.

¶35 Given that Coughlin does not challenge his convictions on counts 1-6 involving the older stepson, we begin our examination with counts 7, 8, 9, and 11, the four counts involving the nephew. These counts cover charges occurring primarily during the autumn months of 1989 through 1992.[12] The State charged these time periods in autumn because that is when Coughlin would regularly take the children deer shining. All three individuals testified to the frequency they went deer shining with Coughlin, and that abuse would nearly always occur at that time.

¶36 The offense charged as count 7 was alleged to have taken place in the autumn of 1989. For Coughlin to be found guilty of first degree sexual assault of a child, the nephew had to be under the age of 13. See Wis. Stat. § 948.02(1)(e). The jury heard testimony that the abuse started in the autumn of 1989 before the nephew turned 13.

¶37 For the remaining three counts, the nephew must have been under the age of 16 for Coughlin to be found guilty on those counts. See Wis. Stat. § 948.02(2). Similarly, the jury

---

[12] Again, those time periods were September 1-November 19, 1989 (Count 7), September 1-December 31, 1990 (Count 8), September 1-December 31, 1991 (Count 9), and September 1-November 19, 1992 (Count 11). Count 10 was dismissed pursuant to a pretrial stipulation.

heard testimony that Coughlin abused the nephew in the autumn of 1990 when he was 13, in the autumn of 1991 when he was 14, and in the autumn of 1992 before he turned 16. As such, the jury reasonably concluded that the nephew was the requisite age for that element of each charged offense.

¶38 Direct and circumstantial evidence gleaned from the testimony further supports the jury's verdict on these four counts.[13] The younger stepson testified that the nephew (his cousin) was frequently there with Coughlin and the two other boys when they went deer shining. The nephew explained that the children would rotate sitting in the front seat, and that Coughlin would touch the penis of whoever was sitting in the front. He further testified that "there was so many incidents of stuff that -- to say one time for one thing is pretty hard to remember." The nephew explained that "it happened enough times

_____

[13] The nephew gave the following answers in response to questioning:

Q: But did you observe [Coughlin] masturbating someone in the front seat?

A: Yeah.

Q: Did he ever masturbate you while you were in the front seat?

A: Yes.

Q: And [the older stepson]?

A: Yes.

Q: And [the younger stepson]?

A: Yes.

where . . . .   We would play with ourselves, he might play with somebody, might not play with somebody."   As to the requisite sexual contact, when asked if Coughlin ever masturbated him when he was in the front seat, the nephew responded:   "Yes."

¶39 The younger stepson also testified that he observed both Coughlin masturbating the nephew and the nephew masturbating Coughlin during deer shining.   Knowing that deer shining occurs in autumn, that the nephew frequently went deer shining with Coughlin, and that the abuse nearly always occurred during deer shining, the jury could have reasonably inferred that Coughlin touched the nephew or caused the nephew to touch him at least once each autumn from 1989 through 1992.   Indeed, the nephew confirmed some sort of abuse occurred during each charged time period.[14]

¶40   Next, we address counts 12-21 involving the younger stepson.   Each of these counts require at least one instance of

---

[14] When asked about specific time periods, the nephew stated the following:

Q:   [W]ould this have happened at least one time in the fall of 1989 before your 13th birthday?

A:   Yeah.   If you're 13 when you're in sixth grade, yeah.

Q:   Would it have happened at least one time in the fall of 1990 when you would have been 13 years old?

A:   Yes.

The prosecutor then proceeded to question the nephew in this manner for the fall of 1991 and 1992, to which the nephew also responded, "Yes."

sexual contact, and they primarily encompass the autumn months from 1989 to 1994 and spring months from 1990 to 1994.[15] The younger stepson testified that he was seven years old when the abuse began and that it continued "[t]hroughout the year" every year until he moved out when he was 18.[16]

---

[15] September 1-December 31, 1989 (Count 12), February 1-May 14, 1990 (Count 13), September 1-December 31, 1990 (Count 14), February 1-May 14, 1991 (Count 15), September 1-November 9, 1991 (Count 16), February 1-May 14, 1992 (Count 17), September 1-December 31, 1992 (Count 18), February 1-May 14, 1993 (Count 19), September 1-December 31, 1993 (Count 20), and February 1-May 14, 1994 (Count 21).

[16] Specifically, the younger stepson testified the following about the relevant time periods:

Q: So that we cover it and it's clear, [i]n the fall of 1989 prior to your 11th birthday, would there have been at least one occasion where the defendant had you engage in sexual activity?

A: Yes.

Q: Likely more than one?

A: Definitely.

Q: How often in the fall would you guys go shining deer?

A: One to two times a week, minimum.

Q: In the spring of 1990 you would have been 11 years old?

A: Yes.

Q: During that spring, would there have been at least one occasion where the defendant had you engage in some type of sexual activity?

A: Yes.

18

Q: Typically how often would something happen a week or a month?

A: At least once a week.

Q: Throughout the year?

A: Throughout the year.

Q: As long as you were there?

A: Yes.

 . . .

Q: In the fall of 1990, before your 12th birthday, so while you were still 11, happen at least one time during that time frame as well?

A: Yes.

Q: Spring of 1991, you would have been 12 years old?

A: Yes.

Q: Can you tell us whether or not there was at least one occasion during that spring of 1991 when the defendant had you engage in some type of sexual activity?

A: Yes.

Q: The fall of 1991, prior to your 13th birthday . . . . Would there have been at least one occasion where it happened?

A: Yes.

Q: In the spring of 1992, you would have been 13?

A: Yes.

Q: And would there have been at least one occasion during that period of time when the defendant had you engage in some type of sexual activity?

A: Yes.

19

¶41 He explained how in autumn of each year he would go deer shining with Coughlin once or twice a week at which time abuse would occur. The younger stepson testified that not only was it always each person masturbating himself, but "there were times when [Coughlin] would want to masturbate us," which Coughlin would do. As stated above, the nephew also testified to how the children would rotate who sat in the front seat with Coughlin, and how Coughlin would touch the penis of whoever was sitting up front, including the younger stepson's penis.

¶42 In response to questioning, the younger stepson confirmed that there were times Coughlin masturbated him and times when he masturbated Coughlin.[17] He explained how in

_____

The prosecutor continued in this fashion, asking the younger stepson if the defendant had him engage in some type of sexual activity during the fall of 1992, the spring of 1993, the fall of 1993, and the spring of 1994, to which the younger stepson consistently replied, "Yes."

[17] The younger stepson testified the following in response to questioning:

Q: Was it always everybody -- each person masturbating themselves, or did something else happen on occasion?

A: No, there were times when [Coughlin] would want to masturbate us.

Q: And would he do that?

A: Yes.

Q: Were there times when he masturbated you?

A: Yes.

Q: Was there anything else that would happen?

20

addition to deer shining, that there were many occasions of sexual activity at the family home. The following back-and-forth ensued:

> Q: And again, when the defendant would ask you to do this, was it always him asking you to masturbate, you would masturbate yourself, or did something else happen on occasion?
>
> A: He would always ask. He would always be there and want us to masturbate, he would want to masturbate us, and at times he did.
>
> Q: At times did he ask one of you to masturbate him?
>
> A: Yes.
>
> Q: Did this happen as well at the house?
>
> A: Yes.
>
> Q: How often would this happen in the home?
>
> A: Weekly.

¶43 He identified the areas of the home where the abuse took place, including the bedrooms, basement, and living room. The younger stepson again confirmed later in his testimony that some kind of sexual activity occurred on a weekly basis.[18] He

---

> A: He would want us to masturbate him.
>
> Q: Did that happen as well?
>
> A: Yes.
>
> Q: Were there times when you masturbated him?
>
> A: Yes.

[18] Specifically,

> Q: And I believe your testimony was this type of sexual activity happened weekly, obviously in

explained the pervasiveness of the abuse and acknowledged that it was difficult to identify an exact time that the given conduct occurred: "Because there was a lot of sexual abuse going on. Kind of hard to keep track of all of it."[19]

¶44 Additionally, the count of repeated sexual assault of a child, count 22, required the jury to find that there were at least three instances of sexual contact between Coughlin and the younger stepson from September 1, 1994, to November 9, 1994, not just one instance like every other count.[20] See Wis. Stat.

---

different locations, not necessarily in the same spot, correct?

A: That's correct.

Q: And -- but it was still within the home on a weekly basis?

A: It was all over on a weekly basis.

[19] The State advanced that during each charged spring, Coughlin engaged in approximately 19 sexual acts against the younger stepson, from which the jury could have inferred that at least one instance of sexual contact occurred. It further argued that for the autumn time periods, Coughlin committed approximately 30 sexual acts during the shortest charged period and over 50 acts during the longest. From this, the State reasoned, the jury could likewise have inferred that the defined sexual contact occurred at least once during each charged time period.

[20] The younger stepson testified the following as to the count of repeated sexual assault of a child:

Q: Finally, in the fall of 1994, you turned 16 in November of that year?

A: Yes.

22

§ 948.025(1). Again, based on the trial testimony displaying the frequency of the abuse during this time of year, the jury could have reasonably inferred from all of the instances of sexual abuse that the charged conduct occurred at least three times.[21]

¶45 Even though the counts involving the older stepson are not at issue, his testimony also supports the conclusion that a reasonable jury could have found, beyond a reasonable doubt, that Coughlin was guilty on the counts involving the nephew and younger stepson. The older stepson testified that in the autumn when he was deer shining with Coughlin and the nephew or stepson, or both, that Coughlin "without fail" would ask one of the boys "to join in, either masturbating ourselves or masturbate him."

¶46 Additionally, the older stepson testified as to the frequency of the sexual abuse in the firehouse, which he said he would go to once or twice a week with Coughlin, and often with

---

Q: So while you were still 15, that fall, would there have been at least three occasions where the defendant would have asked you to engage in sexual activity?

A: Yes.

Q: Again, you would go shining once, twice a week?

A: Yes.

[21] The State also advanced that for the count of repeated sexual assault of a child, charged from September 1, 1994, to November 9, 1994, approximately 30 sexual acts occurred, from which the jury could have reasonably inferred the charged conduct took place at least three times.

his brother, the younger stepson: "Basically every time we were there alone with him and there was time, on an evening where we were just down there playing pool it would happen. And we were down there frequently, obviously intermingling with trips shining deer and cutting wood." The jury could have reasonably relied on the older stepson's testimony, in addition to the other victims' testimony, to bolster its conclusion that the requisite sexual contact occurred at least once during each charged time period for the nephew and younger stepson, and at least three times for the charge of repeated sexual assault of a child involving the younger stepson.

¶47 More than one inference could have been drawn from the testimony. The jury could have inferred that, during each of the charged time periods, all or some combination of the following acts occurred: Coughlin touched the victim's penis, caused the victim to touch his penis, instructed the victim to masturbate, or masturbated in front of the victim. Taking into account the pervasiveness of the abuse and the victims' inability to recall specific acts at specific times, it was reasonable for the jury to infer that during each of the charged time periods, Coughlin either touched the victim's penis or caused the victim to touch his penis, meeting the definition of "sexual contact."

¶48 The jury could have alternatively inferred that only masturbating of one's self occurred during each charged time period, which would not meet the definition of "sexual contact"

24

here.[22] However, when more than one inference can be drawn, we must adopt the inference that supports the conviction. Long, 317 Wis. 2d 92, ¶19. We "may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Accordingly, as we must, we adopt the inference that supports the conviction and determine that the charged conduct occurred at least once during each charged time period for the first-degree and second-degree sexual assault charges, and at least three times for the repeated sexual assault of a child charge.

¶49 We recognize that individuals who were victimized as children may not be able to pinpoint with precision the time

---

[22] The dissent observes that not all of the sexual activity described by the victims is criminal pursuant to the statutes under which Coughlin was charged. See dissent, ¶¶66, 68. This is true, but it is beside the point. We do not suggest that acts other than Coughlin touching the victims' penises or causing the victims to touch his penis meet the definition of sexual contact or that the jury could have relied on testimony about uncharged conduct to reasonably infer the charged conduct occurred.

period of their abuse.[23] Children may delay reporting for a myriad of reasons and "exactness as to the events fades in memory. Young children cannot be held to an adult's ability to comprehend and recall dates and other specifics." State v. Fawcett, 145 Wis. 2d 244, 249, 426 N.W.2d 91 (Ct. App. 1988). From the last charged time period in 1994 to the time of trial in 2017, about 23 years elapsed since the last event in question took place. The victims themselves indicated that it was hard to testify with specificity due to how frequently both charged and uncharged conduct occurred.

¶50 It is true that the State could have asked more specific questions during trial to attempt to more explicitly connect the defined "sexual contact" to the exact months and years charged. Admittedly, the State also often used the general term "sexual activity" when questioning the victims. But the State's failure to ask the victims specifically whether the defined sexual contact occurred during each of the charged

---

[23] One of the detectives involved in the investigation, Special Agent Holmes, also testified. He explained the methodology regarding how he generally develops a timeline of events during an investigation. For example, he described that in interviews, "a person may not recall specific date or time" so he uses birthdays, holidays, anniversaries, and other events to identify when during the year certain events took place. Special Agent Holmes determines their grade in school and their ages during that grade. This testimony could have helped the jury better understand the time periods at issue and the answers the victims gave regarding their ages and grades in school at the time of the abuse. It also could have helped the jury understand that victims cannot always be expected to recall the exact dates that certain conduct took place.

time periods does not negate Coughlin's heavy burden to overcome the deference we give to a jury verdict.

¶51 The jury was apprised of the ages of the victims and the years during which the abuse took place. It could, for example, reasonably connect deer shining to the autumn months, and it knew that both charged and uncharged conduct took place during deer shining. The jury could then draw the inference that the charged conduct took place at least once during each autumn. It could likewise draw the inference that Coughlin engaged in the charged conduct against the younger stepson in the spring, since the jury heard testimony about abuse occurring "weekly" and "[t]hroughout the year" for as long as the younger stepson lived with Coughlin. Considering the totality of the evidence, including the pervasiveness of the abuse throughout the boys' childhoods, the jury was not required to view each piece of evidence in a vacuum and conclude that only uncharged conduct took place during the charged time periods. See Smith, 342 Wis. 2d, 710, ¶36.

¶52 Additionally, we observe that the jury acquitted Coughlin on the count involving a fourth alleged victim. This is indicative of a jury that carefully evaluated the evidence for each count. See State v. Leach, 124 Wis. 2d 648, 673, 370 N.W.2d 240 (1985) ("The jury was expressly instructed to consider each count separately. The jury was also instructed not to let the defendant's guilt or innocence on one count affect its verdict on any other count. Only cynicism would suggest this instruction was disregarded by the jury . . . .").

27

When denying Coughlin's postconviction motion, the circuit court also highlighted this acquittal as an indicator of the jury acting reasonably. Although this observation is not dispositive, it supports the notion that the jury considered each count in turn and with it each charged time period.

¶53 We cannot conclude that the jury acted unreasonably when it convicted Coughlin of all 15 counts at issue. Based on the testimony that indicates the victims essentially lived with this abuse in their day-to-day lives over a longer time period that spanned the charged time periods, we cannot agree with Coughlin that there is no evidence that the charged conduct occurred during those specific time periods. We acknowledge that the charged conduct was mixed in with uncharged conduct and the State's questioning occasionally lacked specificity, but the evidence that the charged conduct occurred at all relevant times is not so lacking in probative value and force such that we should substitute our judgment for that of the jury.

¶54 In sum, under the facts of this case, we conclude that the sufficiency of the evidence should be evaluated according to the jury instructions. Further, we conclude that there was sufficient evidence for the jury to find Coughlin guilty on all 15 counts at issue. Coughlin failed to overcome his heavy burden to show that no reasonable jury could have concluded, beyond a reasonable doubt, that he was guilty.

¶55 Accordingly, we reverse the decision of the court of appeals.

28

*By the Court.*—The decision of the court of appeals is reversed.

¶56   JILL J. KAROFSKY, J., did not participate.

¶57 REBECCA FRANK DALLET, J. (*dissenting*). The problems in this case are of the State's own making. The State did not have to charge Coughlin the way it did: only with violating Wis. Stat. § 948.02(1) and (2) by having "sexual contact" with the victims, as defined in Wis. Stat. § 948.01(5), and only during narrow and particular date ranges.[1] Having made that decision, however, it was the State's burden to prove beyond a reasonable doubt both that Coughlin committed the specific crimes he was charged with and that he did so during the date range associated with each count. It failed to do so. Alternatively, the State could have amended the charges at trial to reflect the evidence presented to the jury, including broadening the time period for each charge. It didn't do that either. And so, given the specific charges listed in counts 7-9 and 11-22, the record contains insufficient evidence to support the jury's guilty verdict.

¶58 The majority opinion also mistakenly evaluates the sufficiency of the evidence against the jury instructions instead of the verdict form. The verdict form, however, is the only indication of what facts the jury actually found. So, at least in this case, where the verdict form lists only one of two

---

[1] The State also charged Coughlin with one count of repeated sexual assault of a child under Wis. Stat. § 948.025(1)(d). That count is premised on at least three violations of Wis. Stat. § 948.02(1) between September 1 and November 9, 1994. Because the State failed to meet its burden to show that any violation of § 948.02(1) occurred during any of the charged time periods, it necessarily also failed to meet its burden of showing at least three such violations occurred during the period related to the alleged violation of Wis. Stat. § 948.025.

1

possible theories of guilt, the verdict form should guide our review. I therefore respectfully dissent.

I

¶59 Coughlin's sufficiency-of-the-evidence challenge presents a novel problem. Relevant to every sufficiency-of-the-evidence challenge are the information, the jury instructions, and the verdict form. The information lists the statute under which the defendant was charged and includes brief factual allegations supporting the charge. Before the jury deliberates, the judge instructs the jury on all of the elements of the crime, as well as on any possible defenses. The jury then deliberates and returns a verdict form, indicating whether it found the defendant guilty or not guilty of the crime "as charged in the information." In a typical case, there is no discrepancy between the information, the jury instructions, and the verdict form; they all list the same statutory elements and factual theory of guilt. Thus, in a typical sufficiency-of-the-evidence challenge, it makes no difference whether the court evaluates the evidence against the jury instructions or the verdict form.

¶60 Here, however, there is a discrepancy between the two. The jury was instructed that it could find Coughlin guilty if either he touched the victims' penises or they touched his. Those instructions mirror the factual theory the State presented at trial, as well as the two theories of guilt listed in the definition of "sexual contact" in Wis. Stat. § 948.01(5)(a):

2

> 1. Intentional touching by the defendant or, upon the defendant's instruction, by another person, . . . of the complainant's intimate parts.
>
> 2. Intentional touching by the complainant . . . of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.

See also Wis. Stat. § 948.02 (requiring "sexual contact" as an element of second-degree sexual assault). The verdict form (and the information), however, reflected just one of those theories: that Coughlin had touched the victims' penises. Both the jury instructions and verdict form are accurate, but the verdict form is under-inclusive; that is, it states just one of the two possible theories of guilt on which the jury was instructed. Since neither misstates the law, the question here is which one should control our review of the sufficiency of the evidence.

¶61 Our prior cases have dealt with related situations, but no prior case is directly on point. In State v. Beamon, 2013 WI 47, 347 Wis. 2d 559, 830 N.W.2d 681, we held that when the jury instructions required proof of an element of the crime not included in the statute, then the court should test the sufficiency of the evidence against the statutory elements. Id., ¶¶28, 40. Two years later, we explained that the jury instructions must include a theory of guilt consistent with both the statutory elements of the crime and the factual theory of guilt the State presented at trial. State v. Williams, 2015 WI 75, ¶63, 364 Wis. 2d 126, 867 N.W.2d 736. When they don't, the court should determine whether the jury would have convicted the defendant had it been given such proper instructions. Id.

3

¶62 Although neither Beamon nor Williams are directly on point, our rationale in Williams supports the conclusion that the verdict form should control in this case because it reflects what the jury actually found.[2] In Williams we explained that when we review a jury's verdict in a sufficiency-of-the-evidence challenge and the jury received erroneous jury instructions, our conclusion turns on what the jury would have done absent the erroneous instructions. 364 Wis. 2d 126, ¶63. We also explained that not every such challenge is created equal. For instance, when the jury instructions include an extra element not required by statute, we can safely assume that the jury would have convicted the defendant under the proper jury instructions because if it found that the State proved an extra, non-statutory element, it necessarily found that the State also proved all of the statutory elements. Id., ¶¶61-62; see also State v. Wulff, 207 Wis. 2d 143, 151, 557 N.W.2d 813 (1997). The inverse, however, is not true. "[I]f an erroneous jury instruction omits an element or instructs on a different theory, it will often be difficult to surmise what the jury would have done if confronted with a proper instruction," because the jury's verdict says nothing about statutory elements or factual theories of guilt the jury was never asked to consider. Williams, 364 Wis. 2d 126, ¶62.

---

[2] In reaching the opposite conclusion, the majority relies mostly on Beamon. But Beamon dealt only with a conflict between the statutory elements and the jury instructions. See 347 Wis. 2d 559, ¶¶24, 28. Here, neither the jury instructions nor the verdict form conflict with the elements of Wis. Stat. § 948.02, so Beamon doesn't help resolve the issue.

4

¶63 Applying that rationale to this case, the court should test the sufficiency of the evidence against the verdict form because that is the only evidence of what the jury actually found.[3] See id. A verdict form reflects the jury's actual findings based on the evidence, while the jury instructions only inform the jury about the law it must apply when making those findings. Here, the jury was correctly instructed that, as defined in Wis. Stat. § 948.01(5), "sexual contact" could include either Coughlin touching one of the victim's penises or one of the victims touching Coughlin's. The State's factual theory at trial included both statutory theories of guilt. But the verdict form shows that, for each count, the jury concluded only that Coughlin had touched a victim's penis during the relevant time periods. See Williams, 364 Wis. 2d 126, ¶62. Accordingly, in evaluating whether there is sufficient evidence to support the jury's verdict, we should evaluate whether, viewing the evidence most favorably to upholding the verdict, a reasonable jury could have found beyond a reasonable doubt that Coughlin touched the relevant victim's penis during each relevant time period. See id., ¶63.

II

¶64 All of that said, even if the court evaluates the evidence against the jury instructions, it is still insufficient to support the jury's guilty verdict. When we review a

---

[3] The opposite is likely true if the verdict form includes a theory of guilt that was not part of the jury instructions; that is, the verdict form is over-inclusive. See Williams, 364 Wis. 2d 126, ¶¶60-61; Wulff, 207 Wis. 2d at 151.

5

sufficiency-of-the-evidence challenge, we "give deference to the jury's determination and view the evidence in the light most favorable to the State." See, e.g., State v. Long, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. Coughlin was charged under Wis. Stat. § 948.02(1) and (2), for which the key element is "sexual contact . . . with a person who has not attained the age of 16." And consistent with the definition of "sexual contact" in § 948.01(5), the State alleged that Coughlin intentionally touched the victims' penises or had them touch his. It also alleged that, for each count, such conduct occurred during specific time periods, each comprising no more than four months. Thus, to sustain Coughlin's convictions, the record must contain evidence that, viewed in the light most favorable to the State, would allow a reasonable jury to conclude beyond a reasonable doubt that during the specific months alleged for each count, Coughlin either intentionally touched that victim's penis or that victim intentionally touched Coughlin's penis at his direction. See, e.g., Long, 317 Wis. 2d 92, ¶19.

¶65 The majority wrongly concludes that just because there is evidence that Coughlin had criminal sexual contact with the victims at some point, the jury could infer that such contact occurred during each specific time period. In doing so, the majority papers over the ambiguous testimony regarding exactly what kind of sexual activity happened when. Specificity matters because some of the sexual activity the victims testified to fits the charges of second-degree sexual assault, but some does not. Likewise, it's unclear that the conduct that fits the sexual-assault charge occurred during the charged time periods.

These ambiguities are not "beside the point," see majority op., ¶48 n.22; they are the point. The jury's guilty verdict cannot be sustained based on the victims' testimony that "some sort of abuse occurred during each charged time period." See id., ¶39 (emphasis added). There must be evidence on which the jury could rely to conclude beyond a reasonable doubt that the specific kind of abuse with which Coughlin was charged——"sexual contact" as defined in Wis. Stat. § 948.01(5)(a)——occurred with respect to each victim during each charged time period. See State v. Hall, 53 Wis. 2d 719, 723, 193 N.W.2d 653 (1972) (reversing defendant's conviction because, although there was evidence committed some crime, the evidence was insufficient that he committed the specific crime with which he was charged). Because there is not, the jury could not find Coughlin guilty beyond a reasonable doubt. See Wulff, 207 Wis. 2d at 151–54.

¶66 The evidence shows that different kinds of sexual abuse occurred for many years, but it is unclear about exactly what form that abuse took and when it happened. There is certainly evidence that Coughlin engaged in sexual contact with the victims at some point. As the majority correctly points out, there is testimony that Coughlin touched the victims' penises or they touched his. See majority op., ¶38 n.13. Both victims also testified, however, that other sexual activity occurred during each time period that does not fit the charge of

7

second-degree sexual assault of a child.[4]   For instance, A.F. testified that on some occasions he, J.C., and Coughlin masturbated together, but he and J.C. did not touch Coughlin's penis nor did he touch theirs.   J.C. testified that sometimes when he went deer shining with Coughlin, Coughlin would "masturbate whoever was in the front seat, or he would try to, and himself."   The statutes under which Coughlin was charged, Wis. Stats. § 948.02(1) and (2), criminalize neither attempted sexual contact with children nor their self-masturbation, even if done at the defendant's instruction.[5]   Other statutes do, such as § 948.07 (sexual enticement) or § 948.10 (exposing genitals), but the State neither charged Coughlin with those offenses nor amended the charges at the close of the evidence.   What the court is left with then is evidence showing that sometimes Coughlin committed second-degree sexual assault as charged and sometimes he didn't.   It fell to the State to clear up that ambiguity and prove beyond a reasonable doubt that, during each

---

[4] A third victim testified about Coughlin's conduct with J.C. and A.F.   His testimony, like J.C.'s and A.F.'s, identified conduct both criminal and not criminal but was ambiguous as to which conduct occurred when.   Therefore, the jury could not infer from this victim's testimony that Coughlin committed second-degree sexual assault against either J.C. or A.F. during the specific months the State alleged.

[5] Self-masturbation is covered by the definition of "sexually explicit conduct" in Wis. Stat. § 948.01(7), but such conduct does not constitute second-degree sexual assault unless it also meets the definition of "sexual contact" in § 948.01(5)(a) or "sexual intercourse" in § 948.01(6).   See Wis. Stat. § 948.02(2).   Self-masturbation is also likely covered by § 948.10, which makes it a felony for a person to either expose his genitals to a child or cause a child to expose the child's genitals.   The State, however, charged Coughlin only under § 948.02(1) and (2).

specified time period, Coughlin engaged in sexual contact as defined by § 948.01(5)(a).

¶67 The State failed to meet that burden on all counts. For the counts related to J.C., see majority op., ¶9 n.8, the prosecutor's questioning regarding the particular time periods directly followed a series of questions about whether Coughlin had performed oral sex on J.C. or any of the other victims. J.C. testified that Coughlin had tried but had not done so. The prosecutor then asked whether "this" happened during the fall of 1989 (count 7), to which J.C. answered, "yes." Regarding counts 8, 9, and 11, the prosecutor asked J.C. whether "it" happened during each of the relevant time periods, to which J.C. again answered, "yes." The only reasonable inference from this series of questions is that, during each time period, Coughlin asked to perform oral sex on the victims and they refused. That is attempted sexual contact, evidence of which is insufficient to support an inference that Coughlin actually engaged in sexual contact as defined by § 948.01(5)(a) during the time frames relevant to counts 7-9 and 11.

¶68 To be sure, J.C. testified that Coughlin engaged him in some "sexual activity" on a regular basis during the relevant time periods. But "sexual activity" is a broad term undefined by statute, and it is not necessarily "sexual contact" as defined by § 948.02(2)—a crucial distinction the majority ignores. J.C. testified that he went deer shining with Coughlin "a lot of times over the years," and that when he did, he and Coughlin would "definitely usually" masturbate:

9

State: And was it each person masturbating themselves or would something else happen?

J.C.: [Coughlin] would either masturbate whoever was in the front seat, or he would try to, and himself.

State: [W]ould he ask somebody to masturbate him on occasions?

J.C.: Yeah. He would ask, but I never saw anyone actually do it.

State: Okay. So that never happened when you were along?

J.C.: No.

State: But did you observe him masturbating someone in the front seat?

J.C.: Yeah.

State: Did he ever masturbate you while you were in the front seat?

J.C.: Yes.

State: And [the third victim]?

J.C.: Yes.

State: And [A.F.]?

J.C.: Yes.

. . .

State: Okay. And how often did you go shining with [Coughlin] and [the third victim] and/or [A.F.]?

J.C.: A lot of times over the years. But I couldn't say for sure how many times per given year.

State: Okay. Was it something that happened once a month, more than once a month, less than on[c]e a month?

J.C.: I would say more than once a month during the late summer and fall.

10

State: Okay. And would it always end up with you guys parking somewhere and having everybody masturbate?

J.C.: Definitely usually.

This testimony, which is representative of the State's questioning of the other victims, establishes that some of the times that J.C. went deer shining with Coughlin, Coughlin would masturbate J.C., which is sexual contact under § 948.01(5)(a) and therefore second-degree sexual assault under § 948.02(2). Other times, J.C. and Coughlin would each masturbate themselves, which is not sexual contact and therefore is not second-degree sexual assault. But there is no evidence from which a reasonable jury could infer that the former occurred during the narrow time periods associated with counts 7-9 and 11. It could only speculate on that point, which is insufficient to sustain the jury's verdict. See State ex rel. Kanieski v. Gagnon, 54 Wis. 2d 108, 117, 194 N.W.2d 808 (1972) ("[T]he defendant cannot be convicted on mere suspicion or conjecture.").

¶69 The State's case on the counts regarding A.F., see majority op., ¶9 n.9, fares no better. A.F. testified that Coughlin assaulted him in Coughlin's car after shining deer, at A.F.'s house, at an industrial business, and at the Lyndon Station firehouse. He testified that the assaults during deer-shining trips began in 1985——three years before the earliest charged time period——and that sometimes Coughlin and A.F. would masturbate themselves, while other times Coughlin would masturbate A.F. As for the assaults in the house, A.F. testified that they would happen "weekly" and that they would "typically" involve Coughlin "watching [A.F.] masturbate,"

11

although "at times" Coughlin would ask A.F. to masturbate him. At the industrial business, A.F. testified that, there, Coughlin only "asked [A.F.] to masturbate." And at the firehouse, Coughlin "would want to masturbate" after playing pool with A.F.

¶70 Of those instances, only the times that Coughlin masturbated A.F. after shining deer constitute sexual conduct for the charge of second-degree sexual assault. But, per A.F.'s testimony, that could have happened as early as 1985, and the State never clarified whether that specific conduct occurred during the short, specific time periods related to each count from 1989 through 1994. The State's questioning on that point was again ambiguous, asking A.F. whether, during the time period associated with each count, Coughlin "had [A.F.] engage in some type of sexual activity" (emphasis added). But again, not all sexual activity A.F. described is criminal under § 948.02(2). Thus, even viewing the evidence in the light most favorable to the State, a reasonable jury could not have found beyond a reasonable doubt that Coughlin committed second-degree sexual assault against A.F. during the specified time periods.

### III

¶71 Criminal defendants have a high bar to clear when challenging their convictions on sufficiency-of-the-evidence grounds. But that standard does not relieve the State of its duty to clear the equally high bar of proving a defendant is guilty beyond a reasonable doubt. Here, the State failed to do so regarding the specific time periods associated with

counts 7-9 and 11-22. Coughlin's convictions must therefore be reversed.