COURT OF APPEALS
DECISION
DATED AND FILED

October 26, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1261-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF567

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PATRICK D. BRUSS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Patrick D. Bruss appeals a judgment of conviction for first-degree reckless homicide as party to a crime in connection with the

overdose death of Warren Stenglein and for obstruction of an officer. He argues the evidence was insufficient to support his conviction for reckless homicide. He also argues the circuit court erroneously exercised its discretion when it denied Bruss's motion to set aside the verdicts based on a juror's potential exposure to extraneous information regarding Bruss's criminal history. We reject Bruss's arguments and affirm.

## BACKGROUND

¶2 Stenglein's father found his body on the evening of December 15, 2015. Nearby was a syringe that tested positive for heroin and fentanyl. The parties stipulated that Stenglein had died of acute mixed drug intoxication involving fentanyl, cocaine, and heroin. Bruss was implicated in the delivery of the drugs that killed Stenglein based on text messages found on the victim's cell phone. Following a jury trial, Bruss was convicted of first-degree reckless homicide as party to a crime and of resisting or obstructing an officer, both as a repeater.[1]

¶3 Before sentencing, Bruss filed a motion for a new trial. As a basis, Bruss alleged he had a private investigator speak with Juror 12, who had caused earlier verdicts to be rejected after she expressed reservations during polling. During the conversation with the private investigator, Juror 12 claimed that Juror 15 had made a statement about having done his own research into Bruss's criminal record. Juror 15's statement was alleged to have been made after the jury had delivered its final verdicts, while the jurors were exiting the courtroom.

---

[1] The obstruction conviction is at issue only regarding Bruss's assertion that he is entitled to a new trial by virtue of the use of extraneous information by a juror.

2

¶4      During an evidentiary hearing, Juror 12 claimed that Juror 19, the foreperson, had also overheard Juror 15's statement.  Juror 19 denied hearing the statement, and Juror 15 denied making it.  Juror 15 also denied looking up Bruss's criminal record during the trial.  The court found Jurors 15 and 19 more credible, and it determined Juror 12 was most likely "conflating things she knew during the course of the deliberations, that she learned after the deliberations in the jury room, with things that came after all of this."  Bruss now appeals his conviction, asserting the evidence was insufficient to support his reckless homicide conviction and the circuit court erred by denying his motion for a new trial.

## DISCUSSION

### I. *Sufficiency of the Evidence*

¶5      Bruss first challenges whether the evidence was sufficient to convict him of the reckless homicide offense.  Reckless homicide by delivery of a controlled substance is proscribed by WIS. STAT. § 940.02(2)(a) (2019-20),[2] and requires the State to prove, as relevant here, the following four elements:  (1) that Bruss delivered a substance; (2) that the substance contained the controlled substances heroin and fentanyl; (3) that Bruss knew or believed the substance consisted of heroin and fentanyl; and (4) that Stenglein used the substance delivered by Bruss and died as a result of that use.  *See* WIS JI—CRIMINAL 1021.  Bruss was also charged as a party to the crime, which means he could be held criminally liable if he directly committed the crime, intentionally aided and

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

abetted the commission of the crime, or was a party to a conspiracy to commit the crime. *See* WIS. STAT. § 939.05(2).

¶6        When we review a conviction to determine whether it was based on sufficient evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State, including reasonable inferences from that evidence. *State v. Coughlin*, 2022 WI 43, ¶24, 402 Wis. 2d 107, 975 N.W.2d 179. A defendant bears the heavy burden of showing that the totality of the evidence could not have reasonably supported a finding of guilt. *Id.*, ¶25. "We will not substitute our own judgment for that of the jury unless the evidence is so lacking in probative value and force that no reasonable jury could have concluded, beyond a reasonable doubt, that the defendant was guilty." *Id.*, ¶24.

¶7        Bruss has not met the heavy burden placed upon him. Bruss acknowledges that the evidence showed he helped Stenglein acquire heroin by driving him to the point of purchase in Milwaukee. Bruss argues that, because there was "no evidence of exactly what happened once Bruss and Stenglein got to Milwaukee," there was no evidence that he was party to the crime of delivery of the drugs, as opposed to Stenglein's mere possession of the drugs.

¶8        Contrary to Bruss's argument, the trial evidence supported reasonable inferences establishing aider-and-abettor liability for the delivery offense. The text messages between Bruss and Stenglein show that in the days preceding Stenglein's death, Bruss represented to Stenglein that he could get him good "flame"—a.k.a. heroin—from someone else. On the morning of Stenglein's death, Stenglein and Bruss exchanged text messages that suggested Bruss would pick up Stenglein at around 7:30 a.m. and "go down" somewhere. About three hours after Bruss was to pick up Stenglein, Stenglein sent a text to Bruss

stating: "holy shit dude. That shit is good. Are you doing all right, bro." That was his final outgoing message.

¶9      Between 8:00 a.m. and 10:00 a.m. on the morning of Stenglein's death, Bruss had multiple communications with individuals identified in his phone contacts as "Pedro Pizza," "P," and "D boy." Dana Lewein, a former drug user who admitted that she and Bruss previously purchased heroin together, testified that their sources in Milwaukee were named "Pedro," "P," and "D."[3] Based on the evidence, the jury could reasonably infer that Bruss arranged to meet one or more of his dealers, drove with Stenglein to the point of purchase in Milwaukee, purchased the heroin, and delivered it to Stenglein. Contrary to Bruss's argument, it was not necessary for the State to present *direct* evidence, by witness testimony or another means, that the heroin entered Bruss's hands before it entered Stenglein's.

## II.  Juror Misconduct

¶10     We review a circuit court's decision resolving a motion for a new trial for an erroneous exercise of discretion. *State v. Eison*, 194 Wis. 2d 160, 171, 533 N.W.2d 738 (1995). A circuit court must decide underlying issues of both fact and law when it is alleged that the jury considered extraneous information. *Id.* We will affirm the court's decision "when the record shows that the circuit court looked to and considered the facts of the case and arrived at a conclusion consistent with applicable law." *Id.* We review a challenge to the circuit court's

---

[3] Bruss initially implicated Lewein as the driver, but Lewein denied that she was with Bruss and Stenglein, and her cell-phone records showed she never left Pewaukee Lake during the relevant time frame.

5

factfinding using the "clearly erroneous" standard of review. *Hennessy v. Wells Fargo Bank, N.A.*, 2022 WI 2, ¶38, 400 Wis. 2d 50, 968 N.W.2d 684.

¶11 Here, Bruss argues the circuit court's finding that Jurors 15 and 19 were more credible than Juror 12 is not entitled to deferential review under the clearly erroneous standard. He observes that WIS. STAT. § 906.06(2) precludes a juror from testifying about matters or statements occurring during the course of deliberations or about the juror's state of mind or reasoning, except that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Bruss contends this rule was violated in two ways; first, because the court "wholly failed to make any rulings concerning the competency of the testimony that was presented at the motion hearing," and second, because the court stated as part of its reasoning for denying Bruss's motion that it was surprised to learn that Juror 15 "was one of those who was a little more on the fence" about Bruss's guilt.[4]

¶12 We reject both aspects of Bruss's argument. First, Bruss cites no authority supporting the proposition that the circuit court must make explicit competency determinations under WIS. STAT. § 906.06(2). The fact that the circuit court held an evidentiary hearing on Bruss's motion satisfies us that the court regarded the foundational criteria set forth in § 906.06(2) as being met—that is, that a juror alleged extraneous prejudicial information had been brought to the jury's attention and was not merely providing information about the jury's

---

[4] Bruss does not argue that the circuit court's factual findings were otherwise clearly erroneous.

deliberations. We search the record for reasons to sustain the circuit court's exercise of discretion, so this implied finding is sufficient. *See State v. LaCount*, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780.

¶13 The more difficult question is whether the circuit court erred when it mentioned Juror 15's testimony about his perceptions regarding the strength of the State's case and matters that occurred during deliberations. Such testimony was, as Bruss points out, likely incompetent under WIS. STAT. § 906.06(2). However, the record demonstrates that the testimony was elicited by Bruss himself. Accordingly, we conclude any error on the circuit court's part was invited by Bruss's decision to question the witness on matters to which he could not testify. *See State v. Slater*, 2021 WI App 88, ¶40, 400 Wis. 2d 93, 968 N.W.2d 740.

¶14 Juror 15 was the State's witness. The party alleging the existence of extraneous prejudicial information has the burden of satisfying all the elements of that claim, including juror competency. *State v. Messelt*, 185 Wis. 2d 254, 275, 518 N.W.2d 232 (1994); *State v. Searcy*, 2006 WI App 8, ¶32, 288 Wis. 2d 804, 709 N.W.2d 497. The defense rested at the beginning of the second evidentiary hearing, having presented Juror 12 as its only witness. When questioning Juror 15 on direct examination, the State confined its inquiries to the relevant question of whether a juror had independently researched Bruss's criminal record as Juror 12 alleged.

¶15 All of the arguably improper testimony occurred during the cross-examination, when the defense questioned Juror 15 about whether he recalled "that the jury reached a verdict and then had to go back and reach a verdict again." When Juror 15 responded affirmatively, Bruss then asked, "Do you recall whether or not anybody was frustrated based upon the fact that you needed to continue to

deliberate?" That question prompted a narrative statement of considerable length from Juror 15, who recounted that he and several other jurors had not been in favor of convicting Bruss initially; that they had been persuaded upon being reminded of their obligation to follow the law; and that it was an "uncomfortable" situation when Juror 12 dissented during the polling, but he empathized with her.

¶16 The circuit court acknowledged it was in the "unusual position with a jury trial [of] having to make a credibility determination." The credibility issue could not have been more stark: Juror 12 claimed Juror 15 had made a statement about researching Bruss's criminal record, while Juror 15 denied making the statement or doing any outside research. The circuit court reasonably resolved that credibility issue using the testimony before it, and was in fact urged to do so by Bruss, who argued that he feared Jurors 15 and 19 "have a reason to lie today in that they are very frustrated by the jury deliberation process." The fact that Bruss elicited a significant amount of arguably incompetent testimony during the cross-examination—and then actively invited the circuit court to rely on it in determining who was telling the truth—persuades us that no error can be ascribed to the court's reasoning, to whatever extent that reasoning may have been affected by the arguably improper testimony elicited by the defense.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.